## C. C. HEAD v. THE STATE.

No. 1828. Decided March 1, 1899.

**1.   Murder—Evidence—Hat Worn by Deceased.**

On a trial for murder it is competent for the State to introduce in evidence the hat worn by deceased at the time of the killing, where it is shown to be the identical hat and practically in the same condition that it was at the time of the homicide, notwithstanding its custody and care during the interim has not been accounted for.

**2.   Expert Evidence as to Firearms.**

It is competent for a witness who has qualified himself as an expert in the use and handling of a pistol of a certain caliber to testify that it would not powder-burn for a greater distance than five or six feet.

**3. Charge of Court—Special Instructions.**

It is not error to refuse requested instructions where, in so far as they are applicable, they have been given in the general charge.

**4. Charge—Belittling the Defense.**

In a trial for murder, where there is no issue as to the fact that defendant killed deceased, but on the contrary defendant himself as a witness has so testified, a charge of court, "If you do not believe beyond a reasonable doubt from the evidence that W. W. L. is dead, that defendant unlawfully killed him, you will find defendant not guilty," is not subject to the criticism that it was calculated to belittle defendant's case and place it in a contemptuous light before the jury, nor was it calculated to .prejudice defendant's rights.

**5. Evidence—Testimony Taken at Inquest—Predicate.**

The testimony of a witness given at the inquest held by a justice upon the dead body is properly excluded where no predicate has been laid to authorize its introduction in evidence.

**6. New Trial—Newly Discovered Evidence.**

The fact that a witness testifies on the trial differently from what he has previously told defendant's attorney his testimony would be, is not such surprise as would authorize a new trial for the newly discovered evidence of another witness to contradict him, for whom defendant might have applied for a postponement or continuance.

APPEAL from the District Court of Fannin. Tried below before Hon. E. D. McCLELLAN.

Appeal from a conviction for murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The indictment charged appellant with the murder of W. W. Lyons, by shooting him with a pistol, on the 7th day of November, A. D. 1897.

W. W. Lyons, the deceased, was a son-in-law of defendant. No witnesses were immediately present at the killing, and no one heard what occurred between the parties. Deceased came to defendant's house with another party while the family were at dinner. They were asked in to dinner; deceased declined to go, but sent word in to defendant that he desired to see him. Defendant came out on the porch, and he and deceased walked off some distance from the house and went around behind the barn and stable. Defendant, who testified in his own behalf, stated that deceased owed him $13 which he had borrowed some time before, and that he had dunned him for the money a few days before the killing, and deceased did not seem to like it, that he dunned him.

He says, after he went out on the porch, deceased said, "I want to see you;" and they walked out to the barn and through the hallway between it and the stable, and out behind the buildings. That deceased then said to him, "Head, I can't pay you that $13 I owe you; you can live without it better than I can. Besides, my women folks tell me that you have been talking about me and saying that I am not honest and won't pay my honest debts." I said, "Wallace, I did not say it," and he said, "You are a d—d liar, and why is it you and that woman can't get along together?" I said, "I guess we get along together as well as any man and wife; and, if we don't, what is it to you?" He replied, "God damn you, I will show you what it is to me; I'll burst your damned brains out," and he picked up a rail and started towards me, and I said, "Don't hit me with that rail," and I stepped back and he kept on coming to- ·

wards me, and I fired and stepped back again, and he kept coming on, and I fired and he fell. I was excitel and believed he would kill me with that rail. He had it in both hands, and drawn back in a striking attitude. He was a powerful man, 26 years old, and weighed 174 pounds."

Defendant's wife testified that she heard loud talking between the parties, and looked and saw deceased with the piece of rail advancing on defendant at the time the shots were fired by the latter.

The State's witnesses, of whom there were several present immediately or shortly after the shooting, all testified that they found no rail or piece of rail on the ground at the scene of the killing that could have been used by deceased in the manner stated by defendant and his wife.

This is the substance of the important testimony elicited at the trial. No further statement necessary.

*Thomas P. Steger*, for appellant.

*Robt. A. John*, Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the state penitentiary for a term of ten years, and he prosecutes this appeal.

The first error assigned by appellant is the action of the court in overruling his motion for continuance. Without reviewing the facts that appellant proposed to prove by the absent witnesses, we deem it sufficient to say that the application was not sufficient, and the court did not err in refusing to grant the same.

Appellant's second assignment of errors complains of the action of the court in permitting the State to introduce the hat worn by deceased at the time of the killing. The ground of appellant's objection is that the State failed to show that the sheriff had possession of the hat from the time of the homicide up to the time of the trial. The sheriff, being the witness offered by the State to prove said fact, swore that he did not remember who gave the hat to him,—whether Tom White or Will Myers (deputy sheriffs),—and did not remember when said hat was turned over to him, and from whose possession it came into the hands of said deputy sheriff. And State's witness Will Myers (deputy sheriff) swore that he and Tom White brought defendant to jail the night of the day of the homicide, and that he knew neither of them brought the hat at that time, that neither of them turned it over to Sheriff Ridling on that occasion, and that the first time he saw the hat after he saw it at the scene of the killing was at the examining trial, in Bonham, November 22, 1897,—two weeks after the homicide. Appellant objected to the introduction of the hat because its custody and care were not accounted for and because there was too great an opportunity for tampering with it between the time of the homicide and its introduction in evidence in this case, two weeks later, and because the State offered, in connection with the hat, to prove by witnesses that there was powder-burn on said

hat, which was also objected to by said defendant. Appellant's objections were overruled, and the hat admitted in evidence, and he reserved his exception. The evidence discloses the fact that the hat introduced by the State in the trial of this case was the same identical hat that deceased wore at the time of the homicide, and that it is in the same condition, practically speaking, that it was at the time of the homicide. There was no error in the court's admitting this hat as evidence in the trial of the cause.

Appellant's third assignment of error complains of the action of the court in permitting the witness R. D. Chaney to testify that a 32 or 38 caliber pistol would not powder-burn over five or six feet distant. The testimony of the witness Chaney, as dislosed in the record, shows that he had been handling firearms for a long time; and he states that a 32 or 38 caliber pistol would not powder-burn for a greater distance than five or six feet. We do not think the court erred in permitting the witness to so testify. He had qualified himself by long experience to testify as to the use of firearms, and that he knew how far a pistol would powder-burn an object. The testimony of experts about matters of this kind is admissible, and it certainly requires experience in the handling of firearms to know what would be the effect of firing one at a certain distance. Meyers v. State, 14 Texas Crim. App., 35; Com. v. Sturtivant, 117 Mass., 122.

Appellant's fourth assignment of error complains of the failure of the court to give charges numbers 1, 2, 3, and 4. We think the charge of the court is an admirable exposition of the law in all its phases, and that the same is applicable to the facts of this case. Wherein the charges asked are applicable, they were given in the general charge; hence we do not think there was any error in the failure of the court to give the charges requested.

Appellant's fifth assignment of error complains of the following portion of the court's charge: "If you do not believe beyond a reasonable doubt, from the evidence, that W. W. Lyons is dead; that the defendant unlawfully killed him,—you will find defendant not guilty." Appellant complains that the charge was material error, and calculated to injure the rights of appellant, "because the uncontroverted evidence in the case is that W. W. Lyons is dead, that appellant himself so stated on the stand, and that he killed said Lyons, and this charge was not called for by the facts in the case; was calculated to belittle defendant's case, and place it in a contemptuous light before the jury; and was, in effect, an argument by the court to the effect that the defendant's evidence and that of his witnesses was on a par in every other particular in controversy with his contention that Lyons was not dead, whereas defendant made no such contention." We do not think that the criticism of appellant is correct, nor do we think the charge was calculated to prejudice the rights of appellant.

Appellant's sixth assignment of error complains of the failure of the court to permit defendant to introduce in evidence the testimony of

the State's witnesses Henry Boykin and Charley Jones at the inquest the day of the homicide, before the justice of the peace, J. J. Dooley, and sworn to by said witnesses before said Dooley. The State objected to the admission of said proposed testimony because it was hearsay, and because no predicate had been laid by defendant to authorize its introduction; and the court sustained said objection, and excluded the testimony. There was no error in the action of the court in excluding said proposed testimony.

The eighth assignment of error complains of the action of the court in overruling his motion for new trial on account of newly-discovered evidence. He states: "That at the time this cause was called for trial, he filed his application for continuance on account of the absence of the witnesses Lije Davis and Charley Jones. This defendant had every reason to believe that the State would introduce Henry Boykin as a witness in this behalf, and that no other witness for the State claimed to be an eyewitness to the killing; and this defendant was not advised, neither was his attorney, that F. L. Woods claimed to be an eyewitness to the homicide until said Woods swore to that fact upon the trial. That said Woods stated to defendant's attorney, Steger, prior to the trial, in an interview in which Woods sought out Steger, that he (Woods) did not see any rail near the body of Lyons, and did not believe a rail was there. If defendant or his attorney had any intimation that Woods would change his testimony on said point, defendant would have asked a continuance or postponement of this case, so that the witness Boykin might have been brought into court to testify." And said bill sets up a great deal more along the line here indicated. It has none of the elements of surprise, such as warrants this court in reversing the judgment for the error of the court in refusing to grant a new trial on this account.

The ninth assignment of error complains that the verdict of the jury is contrary to the law and the evidence. We have carefully examined the statement of facts filed herein, and note the fact that the trial court appends to the statement the following explanation: "By way of explanation to the honorable Court of Criminal Appeals, I hereby certify that the unusual delay in filing the statement of facts in this case was not caused by any negligence on the part of the defendant or his counsel, as defendant's counsel furnished his statement within ten days after adjournment of the court, but the delay has been caused by my inability to prepare a correct statement any sooner, on account of ill health, and press of other important court business at Paris and Clarksville." In view of the fact that this statement, coupled with the ex parte affidavit of appellant's counsel herein filed, conclusively shows that appellant was in no way at fault in failing to get a proper statement of the facts filed in time, we have considered the statement of facts as filed within the time provided by the statute in such case. The evidence amply supports the verdict of the jury, and no error appearing in the record, the judgment is affirmed.                                    *Affirmed.*

DAVIDSON, Presiding Judge, absent.