### EX PARTE R. B. RICHARDS.

#### No. 2675. Decided March 4, 1903.

**1.—Bribery of Officer—Illegal Arrest.**

An offer to bribe an officer for release from arrest is no violation of the statute unless it be shown that the arrest was a legal one. Following Moore v. State, ante, p. 159.

**2.—Same—Practice.**

On a charge of offering to bribe an officer to release him from arrest, where it was doubtful whether the bribe was offered before or after a legal arrest or detention, the party should be held by the examining court to await

the action of the grand jury as to the matter for which he was legally arrested.

Appeal from the District Court of Hill. Tried below before Hon. W. Poindexter.

Appeal from a judgment remanding relator to custody upon a hearing on a writ of habeas corpus.

The opinion states the case.

*Jordan, Collins & Walker,* for relator.—The statute, article 138, Penal Code, under which this prosecution is brought has been construed by this court in the case of Moore v. State, ante, p. 159, that it is no offense for a citizen to attempt to secure his liberty by offering money or other things of value, unless such person was in legal custody. Appellant contends that he was not in legal custody, and if it was true, which the facts do not establish, that an offer of $50 was made to Cranford, as alleged, that no offense was committed in so doing. Authority above cited. But the contention of the State is that, because Cranford found some goods on appellant after his arrest, for the sheriff and Cranford suspecting them to be stolen goods decided to hold appellant upon the telephone message and for the theft of the goods, therefore he was in legal custody, and in support of this contention the State cites article 364, Code of Criminal Procedure, and the case of Morris v. Kasling, 79 Texas, 141. It will be seen upon investigation that article 364, Code of Criminal Procedure, is under the chapter of "search warrants," and could not be so construed as to take away the requirements and effects of articles 247 and 248, Code of Criminal Procedure, which are under the chapter of "arrest without warrant," these articles prescribing how any arrest may be made without warrant. Article 364, Code of Criminal Procedure, evidently was intended to cover instances where a search had been instituted for property known to have been stolen and the posse or officer making the search suddenly finds it and identifies it then and there. But such is not true in this: First, because it was not known at the time of his arrest that the property found with appellant was stolen, or if stolen that appellant was the guilty party, as is shown by the testimony of Cranford; second, because there was no search by anyone for any stolen property, if any. The case of Morris v. Kasling is not in point, as the question raised here was not raised in that case, but they hold that the arrest was illegal.

In the case of Lacy v. State, 7 Texas Crim. App., 403, the court holds the arrest to be illegal, and yet in that case the party arrested was found in possession of the stolen property and was arrested for the theft of that identical property found in his possession. The court in the Lacy case holds that two things must concur in order for an arrest without warrant to be legal: first, that the person sought to be arrested has committed an offense classed as a felony, or as an offense against the public peace; and second, that the offense must have been committed in his presence or within his view. It is also held in Russell v. State, 37

Texas Crim. Rep., 314, the same as in the Lacy case. The construction by the State of article 364, Code of Criminal Procedure, places a limitation upon articles 247 and 248, Code of Criminal Procedure, and renders same practically nugatory, which is not authorized by the law and contrary to the repeated holdings of this court. Giving the facts in this case the most liberal' consideration, and in the light of the State's construction there is not an offense sufficiently established to further restrain him of his liberty, for if any offense was committed it was done in Howell's store. Cranford testifies: "I am not positive whether it was established that the goods of Walker were stolen property before we left Howell's store or after I had taken Richards to the depot to start for Hillsboro." The testimony upon a whole not only fails to show that an offense in law has been committed, but it shows that it is highly improbable and almost impossible for such an offer as Cranford says to have been made. The witness Boyd Beavers, a man chosen by Cranford to assist in the arrest, testifies: "I heard all that was said in the store between Mr. Cranford and Richards. Mr. Richards never did at any time while we were in the store say to Mr. Cranford that he would give him $50 to release him."

*C. F. Greenwood,* County Attorney, *B. Y. Cummings,* Assistant County Attorney, and *Howard Martin,* Assistant Attorney-General, for respondent.—If it be said that at the time the arrest was made the officer did not know of the theft at Abbott and did not take relator in charge for that offense, our reply is that the facts show that at the time the offer to bribe was made the theft at Abbott and the fruits thereof had been discovered, and at that time he was being held for both offenses, and although the arrest in the first instance might have been unwarranted, the custody became legal after the stolen property was taken from relator and the officer proceeded to hold him for both charges. Upon our second proposition, in addition to the statute cited, we refer to the case of Morris v. Kasling, 71 Texas, 141.

DAVIDSON, PRESIDING JUDGE.—Appellant was taken in charge by Cranford at Abbott on a telephone communication from Hillsboro, and, while so in charge of said Cranford, it is claimed, offered him $50 to permit hm to escape. The writ of habeas corpus was resorted to to obtain his discharge, on the ground that the affidavit of Cranford does not show a violation of the law. When the case came on for trial, Cranford testified that he had received a telephone message from the sheriff of Hill County to look for a man of a particular description, who was wanted upon a charge of misdemeanor, and, receiving said message, walked over to the depot, looking out for a man of the description mentioned, and seeing a man coming toward the hotel, and later seeing him coming out of the Walker store with a bundle under his arm, went up to him and informed him that Cranford thought that he (relator) was the man he wanted, and took him in custody upon the information re-

ceived from the sheriff at Hillsboro over the phone. He then went to the telephone office and talked with the sheriff at Hillsboro, and, after this conversation, informed appellant he would have to take him to Hillsboro, and to consider himself under arrest. He states that he then thought he recognized "a mark on the package of goods out of the house of J. L. Walker." He investigated, and found the package had been taken from Walker's store, and was a bolt of ladies' dress goods. While at the telephone office, he searched Richards, and took all the money he had from his person, and gave it to Howell to count, which he did, and, after counting it, wrapped it up in a paper and gave it back to the officer. While in Howell's store, sitting on one of the stools in front of the cigar case and soda-fountain, Cranford says relator "said to me that he had rather give $50 than to go to jail one night, and that he had business in Waco, and, as I would not get but $7 or $8 out of the case, he would give me $50 to let him go on; and at the time he made this statement he had some silver money in his hand." This witness further states that at the time he offered this $50 he had relator in custody for the taking of the bolt of goods from Walker's store, as well as the charge against him at Hillsboro, phoned by the sheriff, but he did not make the arrest for the theft of the goods, "but, finding the goods, and that they were stolen, I held him for that." This witness testified that he had no warrant of arrest for appellant, nor had relator committed any offense in his presence or view, nor had he committed any offense against the public peace, and he had not been directed by any magistrate to arrest relator, nor had it been shown by satisfactory proof, by the representation of a credible person, that a felony had been committed by relator and that he was about to escape, so that he could have no time to procure warrant; nor was relator carrying a pistol on his person. Cranford arrested relator simply upon the telephone communication from the sheriff at Hillsboro, and the sheriff did not inform him at the time that he held a warrant for the man, either for a misdemeanor or felony, and he never found the goods, which he says were taken from Walker, until after relator's arrest, and he did not know whether Richards had taken them or not. It is not even certain whether, at the time the supposed offer to bribe was made, he had discovered any of Walker's goods had been stolen, and he says this may have occurred after he had taken Richards to the depot on the way to Hillsboro. He says that Richards never at any time tendered or offered to pay him anything, but said he had business in Waco, and would rather pay $50 than go to jail one night, and proposed to pay $50 if he could be turned loose and permitted to go. This, he states, was said in an ordinary tone of voice, where there were quite a number of people. It was placed beyond any question that no warrant was issued for relator up to the time of the arrest. There had been no complaint filed against him, but the complaint was filed and warrant issued before Cranford reached Hillsboro with relator, and complaint was filed charging him with the theft of $30.

Howell testified that he was within eight feet of Cranford and re-

lator during the time they were in the store, and they never had any private conversation at any time, and neither did relator whisper to Cranford, nor did relator at any time say he would give Cranford $50 to release him, nor did relator ever at any time, while in his store, have any money in his hands. He paid close attention, he says, to relator, because he was a stranger in the town, and was brought in his store under arrest by the constable. They talked all the time they were in the store in an ordinary tone of voice, and he was near enough to hear everything that occurred while they were in the store. That he had no interest whatever in Richards, 'and never saw him before until he was brought into the store.

Witness Beavers testified that he heard all that was said between Cranford and relator while they were in Howell's store, talking in an ordinary tone of voice, and there was no private conversation or whispering between them; that relator never stated to Cranford at any time while they were in the store that he would give him $50 to release him, so that he could go on to Waco, nor did he have any money in his hands while in the store. This witness was assisting Cranford in making the arrest of relator, and in investigating the matter of the charge against him made at Hillsboro.

Witness Davidson testified that he saw Cranford search relator and take his money from him, and gave it to Howell, and witnessed the count. This amounted to $221. That they tied it up in a package and handed it back to Cranford. He testifies as did the other witnesses in regard to the conversation, and denied that there was any offer made by Richards to pay Cranford $50 for his release. This is practically the case.

There are two propositions relied upon. First, that there was nothing offered by relator for his release from custody; and, second, if there was, it was not a violation of the statute. The arrest was clearly illegal, so far as the case at Hillsboro is concerned, and under the authority of Moore v. State, ante, p. 159, before the offer to bribe could be a violation of the statute, the arrest must be a legal one.

In regard to the theft of Walker's goods, for which relator was also being held, the evidence discloses that he was in possession of same. Cranford leaves it doubtful whether he examined into this theft case before or after the bribe was offered. If offered before the officer ascertained the theft, he was not holding him by virtue of article 364, Code of Criminal Procedure 1895. But if the offer was made after ascertaining this fact, then his detention was legal, relator being in possession of the stolen goods. Being in doubt as to this fact from the evidence, the court was justified in holding relator to answer this charge of offer to bribe, because, under article 364, Code of Criminal Procedure 1895, the officer could arrest, and it would become a question for the jury, if indictment is found, whether bribe was offered before or after arrest.. In so far as the contradiction as to whether the bribe was in fact offered, this is a question of fact to be decided in the final trial; the evidence being contradictory in this record. Where it is in doubt that an offense

has been committed, the party should be held by the examining court to further answer the action of the grand jury.

The judgment is affirmed.

*Affirmed.*