# E. G. McCrary v. The State.

No. 18418.    Delivered June 24, 1936.
Rehearing Denied October 28, 1936.

The opinion states the case.

*Smith & Dowdy* and *John D. Reese,* all of McKinney, for appellant.

**234**

*H. H. Neilson,* County Attorney, and *Roland Boyd,* Assistant County Attorney, both of McKinney, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for twenty years.

An application for a change of venue on the alleged existence of prejudice was in due time filed and presented to the trial court. The means of knowledge of the compurgators was controverted, and appellant, as well as the State, introduced evidence. It appears that Collin County has a population of approximately 46,000. The town of Anna, in which the homicide occurred, is situated in the northern part of the county, being about three and one-half miles from the county line. Shortly after the homicide an indignation meeting was held in Anna, but no trouble resulted. The discussion of the case appears to have been confined largely to the immediate locality of the homicide. Appellant's witnesses expressed the opinion that he could not receive a fair and impartial trial in Collin County. On the contrary, the testimony of witnesses for the State was to the effect that the case had not been generally discussed in the county at large. These witnesses were of the opinion that appellant could receive a fair and impartial trial. The newspaper articles concerning the homicide went no further than to describe the transaction. They were not denunciatory of the appellant.

The testimony on the question of prejudice having presented conflicting theories, the trial court had the discretion of adopting either theory. From the case of McNeely v. State, 104 Texas Crim. Rep., 267, 283 S. W., 522, the following quotation is taken:

"Touching the duty of the trial court and of this court upon an application for change of venue, the law, as deduced from the statutes and the decisions, is, as we understand, that where the application is upon the ground of prejudice, and is controverted, the burden is upon the accused to prove the existence of such prejudice against him or against his case that it is not probable that he can have a fair and impartial trial.

"The duty is upon the trial court to weigh the evidence, and if therefrom there arise conflicting theories, one tending to show prejudice of the nature mentioned and the other the contrary, the discretion as to the court is to adopt either. In the absence of abuse of this discretion, the judgment is not to be disturbed upon the appeal. If, however, the evidence is such that it leads to the conclusion that bias, prejudice or pre-

judgment of appellant or his case is such as to render it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application."

After reviewing the testimony, we are constrained to hold that the trial judge did not abuse the discretion which the law vested in him, and that this court is without legal authority to enter a judgment declaring that in refusing to change the venue there was an abuse of discretion.

It is shown in bill of exception No. 2 that appellant sought to prove by one of his witnesses that he (appellant) stated to the witness after the homicide that he had been stabbed "or struck with something on his left shoulder," and that he wanted the witness to see if he could find a weapon near the body of deceased. It appears from the bill that the statement was made by appellant after he had left the scene of the homicide and gone to a filling station. The bill fails to show how long after the homicide the declaration was made. It fails to embrace any recitals sufficient to enable this court to determine whether the declaration was admissible under the rule of res gestae. The bill failing to show such proximity of time and place and such circumstances as would bring the excluded evidence within the rule of res gestae, we must indulge the presumption that the ruling of the trial court in excluding said testimony was correct. Butler v. State, 3 S. W. (2d) 101; Moore v. State, 228 S. W., 218; Allen v. State, 224 S. W., 891.

The State proved by one of its witnesses that a 32-20 pistol would produce powder burns when fired under certain conditions. Appellant objected to said testimony on the ground it was not shown that the witness fired the shot under conditions similar to those attending the transaction resulting in the homicide. There is nothing in the bill to show that there were no powder burns on the clothing or body of deceased. If deceased was in fact powder burned, the testimony of the witness could not have affected appellant injuriously. A bill of exception to evidence admitted over the objection of the accused must "set out enough of the surrounding facts and circumstances to disclose that the ruling admitting it was erroneous and prejudicial to the appellant." 4 Tex. Jur., 302.

The trial judge instructed the jury that the arrest of deceased by appellant was illegal. Appellant excepted to said charge and to the failure of the court to charge on the perfect right of self-defense. We are of opinion that under the evidence hereinafter set forth the exceptions were not well taken.

Deceased, A. C. Brown, operated a small filling station on

the outskirts of the little village of Anna. After closing, he used the station as his private residence. There was a driveway on the premises of deceased which faced the road. Between it and the road were two brick posts and two gasoline pumps, which obstructed the view from the highway.

About 2 a. m. Dorothy Dobbins came to the station in an automobile and parked in the driveway. Deceased came out in his underclothes and got in the car with her. While in the car they had an act of sexual intercourse. The car was closed and solid half way to the top. The night was dark and the lights were out. No cars passed along the highway during the act of intercourse. According to the testimony of the State, after the completion of the act they got out of the car and deceased started to the doorway of the station. At this juncture appellant, who was marshal and night watchman, came up into the driveway, and, flashing a light on deceased and his companion, placed them under arrest. He had no warrant. Appellant testified that as he approached he saw the car shaking and heard grunting. When he reached the car he flashed his light inside and discovered deceased and Dorothy Dobbins engaged in an act of sexual intercourse. After placing them under arrest he had them walk up the side of the highway. According to the testimony of Dorothy Dobbins, deceased begged appellant without avail to let him put on his clothes. She testified further that while walking along the highway with his back to appellant deceased raised his left arm and that appellant shot him in the back.

Appellant testified that deceased made an assault upon him and struck him on the left shoulder with some kind of an instrument; that in the struggle he held deceased with his left hand and drew his pistol; that he fired the fatal shot while holding his pistol near deceased's body; that he believed his life was in danger.

Art. 212, C. C. P., reads as follows:

"A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an 'offense against the public peace.'"

It is appellant's position that deceased and Dorothy Dobbins were committing an "offense against the public peace" in that they were indecently exposing their persons in a public place. Hence it is contended their arrest without a warrant was authorized under the terms of the above quoted statute. Art. 474, P. C., among other things, provides that one who goes

into or near any public place, or into or near any private house, and exposes his person in a manner calculated to disturb the inhabitants of such place or house shall be fined not to exceed one hundred dollars. A public place is defined in Art. 475, P. C., as being any public road, street or alley of a town or city, or any store or work shop, or any place at which people are assembled or to which people commonly resort for purposes of business, amusement or other lawful purpose.

The nearest residence to deceased's filling station was seventy-five yards away. According to appellant's version, the act of intercourse was on the premises of deceased, and he could not see the parties until he had flashed his light in the car.

Disclaiming any intention of holding that conduct of the character in question would not, under some circumstances, constitute "an offense against the public peace" authorizing an arrest without warrant, we think the testimony in the present record conclusively shows that such an offense was not being committed. Hence the arrest without a warrant was illegal and the court's instruction was proper. Satterwhite v. State, 17 S. W. (2d) 823.

A careful examination of the record leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is urged by appellant that we incorrectly disposed of the question presented by bill of exception number four which brought forward complaint at the court's ruling in permitting State's witness Sparlin to testify as to the distance "powder burns" would occur from a discharged pistol, insisting that under the circumstances we should go to the statement of facts in aid of the bill if it was defective. Appellant now bases his complaint on the claim that the bill shows the experiment upon which the witness predicated his testimony was not made under substantially the same circumstances which existed at the time appellant shot deceased. Further examination of the bill confirms us in our original view that as drawn it does not reflect error. If we go to the statement

of facts, as insisted by appellant that we should, it appears therefrom that appellant has apparently misconceived the effect of Sparlin's evidence. He was not undertaking to testify as to the result of an experiment made with the pistol used by appellant, but was testifying as an expert as to powder burns generally after stating facts which qualified him to speak as an expert on the subject. His evidence shows that he never had the gun used by appellant. We copy Sparlin's testimony.

"My name is A. G. Sparlin and I am a deputy sheriff of Collin County. On numbers of occasions I have tested different guns to determine what distance they would have to be from an object to produce powder burn. I have tested a 32-20 pistol with a lead bullet to determine what distance it will produce a powder burn. From my testing of a 32-20 pistol I will say that it will produce a powder stain on an object that it is aimed at when it is as much as four or five feet from it. I do not know the chemical analysis of the powder that was used in this pistol cartridge that Andy Brown was shot with. Q You don't know that you ever tested a bullet or a shell to see how far it would powder burn with the powder that was used in this shell that Andy Brown was shot with did you? A I did not get the gun. Q You don't know that you ever made a test or an experiment with powder of the kind that was in the shell that Andy Brown was shot with? A I have tested with the same. Q I didn't ask you that, I asked you if you know that you have ever tested with powder like Andy Brown was shot with? A I couldn't say that it was the same powder, no. It was the same character of cartridge."

Appellant not only objected to the foregoing evidence upon the ground that it was based upon an experiment not made under substantially the same circumstances existing when appellant shot deceased, but also upon the ground that Sparlin had not qualified as an expert. This last objection seems unfounded as shown by Sparlin's quoted testimony, and it appears, we think, from the record, that such testimony was admitted not as the result of an experiment, but as the evidence of an expert. In his Ann. Tex. P. C. Mr. Branch states as a general rule (Sec. 131, p. 73) that: "A witness who shows himself familiar with firearms may testify as to the distance shot will scatter, or powder burn, or whether the weapon was recently discharged." Among the cases cited supporting the text is Head v. State, 40 Texas Crim. Rep., 265, 50 S. W., 352, which sustains the court's ruling in admitting the testimony complained of.

Appellant further contends that whether the arrest of deceased by appellant was legal or not became a question of fact based on conflicting testimony, and that such issue should have been submitted to the jury under proper instructions as was done in Earles v. State, 52 Texas Crim. Rep., 140, 106 S. W., 138, and that the trial court committed error in instructing the jury that the arrest was illegal. It was recognized in Earles' case as proper where the evidence was undisputed for the court to tell the jury either that the arrest was legal or illegal. Appellant's contention has made it necessary to again review the facts, which we have done, and in our opinion the evidence both for the State and appellant shows the arrest to have been illegal. Under these circumstances an instruction to that effect was proper.

The motion for rehearing is overruled.

*Overruled.*