BERNARD J. WALSH, PROSECUTOR, v. CITY COUNCIL OF THE CITY OF TRENTON, DEFENDANT.

Submitted January 31, 1936—Decided September 12, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices LLOYD and DONGES.

For the prosecutor, *Frank I. Casey.*

For the defendant, *Sidney Goldmann.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This writ of *certiorari* brings up for review a certain resolution passed by the city council of the city of Trenton, dated October 8th, 1935, finding Bernard Walsh guilty of certain charges and expelling him from the office of councilman of the city of Trenton. The

charges are divided into several classes alleging offenses that were violations of the laws of this state and of the United States; criminal conduct during his term of office as a city commissioner of Trenton; misfeasance and malfeasance in that office; unlawful acts for his own personal gain at the expense of the public, and failure to disclose the known embezzlements of others under his jurisdiction.

No purpose whatever is served by an analysis of the charges, which were detailed with great particularity. In our view, it is merely necessary to discuss the legal situation presented. The history of the prosecutor in the service of the public is, however, pertinent. He has occupied public position since 1910, when he was secretary to the then mayor of Trenton. In 1911, the people of Trenton adopted the provisions of the Walsh act or the commission form of government, as it is generally known. The prosecutor was appointed secretary to the mayor under the new form of municipal government. He continued in this post until 1926, when he was appointed deputy mayor, in which office he continued until 1933. At this time the mayor resigned from the governing body because of ill health and Mr. Walsh was elected by the members of the commission to serve for the unexpired term.

In March, 1935, the voters of Trenton adopted the Municipal Manager Form of Government act. *Pamph. L.* 1923, *p.* 217. The prosecutor became a candidate for the office of councilman at the election held on April 16th, 1935, was elected, and at the organization of the new municipal form of government, on May 14th, 1935, took office as councilman. Shortly thereafter, that is, on July 23d, 1935, the city manager, who (under the statute, *supra*), is the chief executive and administrative officer of the municipality operating under this form of government, preferred the charges against Mr. Walsh, which have been mentioned above. He was tried by the other members of the council, found guilty of certain of the charges and, by the resolution before us for review, dismissed from office.

The members of the governing body who conducted this hearing on the charges, and voted to expel the prosecutor from

office as a member of the council, depend for their authority so to do upon the provisions of chapter CCC, *Pamph. L.* 1874, which is an "Act to provide for the more efficient government of the City of Trenton." Section 20 of that charter, provides as follows: "That the common council shall * * * appoint its times and places of meeting, determine the rules of its own proceedings, be the sole judge of the * * * qualifications of its members, keep a journal of its proceedings, and may punish or expel a member for disorderly conduct, or a violation of its rules; but no expulsion shall take place except by the vote of two-thirds of all the members elected, &c."

It is earnestly argued that the form of government having been changed by the adoption of the Walsh act in 1911, and subsequently by the adoption of the Municipal Manager Form of Government act in 1935, the powers granted by the charter, and particularly those of section 20, above referred to, have been extinguished. We are unable to agree with this reasoning because under either particular plan of government, that is, the commission form or the municipal manager form, neither statute purports to be a charter in any sense of the word and both statutes specifically declare that the powers already enjoyed by the municipality under any statute, general or special, shall continue where there is no inconsistency with the particular new plan of government (*Cf. Pamph. L.* 1911, *pp.* 462, 482, § 18; *Pamph. L.* 1923, *p.* 218, § 302.) Where there is no conflict therefore between the charter powers and the provisions of the statutes setting up new forms of government and which, as in this case were adopted at different times by the municipality, the powers conferred by the Commission Form of Government act and the Municipal Manager Form of Government act are added powers. *Salter* v. *Burk,* 83 *N. J. L.* 152.

It is also earnestly argued that since the act under which the municipality is now operating contains a provision for the recall of councilmen that this amounts to a conflict with the provisions of section 20 of the charter, which have been set forth above. There is no conflict between these two pro-

visions. An examination of article 11, section 1101, chapter 113, *Pamph. L.* 1923 (at *p.* 235), reveals that the electors of a municipality may initiate the recall of a member of the council for any reason that seems to them to be meritorious. For example, the people might be dissatisfied with the manner in which the business of the municipality was being conducted or they might conclude that one or more members of the council were incompetent and for these or kindred reasons file a petition for recall. But the charter provision (section 20) now under consideration permits expulsion for two reasons only—the first, disorderly conduct; the second, violation of the rules of the council. Nor is there any substance to the argument that the recall provision of the statutes (*supra,* article XI, 1101) is a substitute for the remedy given by the Charter act (section 20), or that the charter provision is in conflict therewith and consequently repealed by the later act. The two methods are not only not in conflict but entirely harmonious. See *Attorney-General (Allen),* v. *Tufts (Mass.),* 131 *N. E. Rep.* 573.

We therefore think that the charter provision in this particular still remains in full force and effect and is as efficacious to-day to expel a member of the governing body as it was prior to the adoption of either new plan of municipal government. Having determined that the provisions of section 20 of the charter are still effective, we proceed to determine whether or not the charges against the prosecutor are within the meaning of this section. The charges in question are grave. They involve moral turpitude, violations of public duty, and the like. Are they within the language and intendment of the phrase "disorderly conduct" as written in section 20 of the charter? We consider that any act which violates the criminal code is certainly disorderly conduct and more, and that therefore the charges in this case are within the purview of the section under which the prosecutor was tried. *State* v. *Jersey City,* 25 *N. J. L.* 536.

Our next consideration is the legal question involved. The acts of which the prosecutor of this writ was adjudged guilty by the council were all done prior to his membership in the

present existing governing body. May he be dismissed while a member of the council under the manager form of government for acts done prior to the adoption of the present form of government and of course antedating his election to the present governing body? It will be noted that the statutory provision is penal in character and under familiar rules must be strictly construed. It carries the penalty of expulsion from the governing body only, not disqualification from holding future office.

The authorities in this country are in conflict on this question. In the case of *State* v. *Jersey City, supra,* we find this language: "The council have no power to expel a member for acts committed previous to his election." This statement of law, as a reading of the opinion will disclose, is plainly *dicta,* but the philosophy of our cases supports this position. See *Campbell* v. *Newark,* 71 *N. J. L.* 98; where a police officer was dismissed from the force for violation of the criminal law which happened some years before he was appointed. The court set aside the dismissal, holding in effect that there was no authority to dismiss the officer for offenses committed prior to his entering the service of the city.

"Offenses committed during a previous term are generally held not to furnish cause for removal, and this is especially so where the constitution provides that the penalty in proceedings for removal shall not extend beyond the removal from office, and disqualification from holding office for the term for which the officer was elected or appointed, but where removal carries with it a disqualification to hold office in the future, the rule is otherwise." 46 *C. J.* 986, ¶ 149; *Jacobs* v. *Parham,* 175 *Ark.* 86; 298 *S. W. Rep.* 483; *Thurston* v. *Clark,* 107 *Cal.* 285; 40 *Pac. Rep.* 435; *Graham* v. *Jewell,* 204 *Ky.* 260; 263 *S. W. Rep.* 693; *Speed* v. *Detroit,* 98 *Mich.* 360; 57 *N. W. Rep.* 406; *Conant* v. *Grogan,* 6 *N. Y. St.* 322; *Com* v. *Shaver* (*Pa.*), 3 *Watts & S.* 338.

The quotation from *Corpus Juris* continues: "And it has been held that officers who are their own successors may be removed for acts done in their prior terms of office," citing *State* v. *Welsh,* 109 *Iowa* 19; 79 *N. W. Rep.* 369.

The prosecutor, in our view, cannot be said to have succeeded himself in office and, consequently, the reasoning of the cases, based on succession in office, cannot be adopted. As commissioner of the city of Trenton under the Walsh act, the prosecutor had complete control over the particular department of which he was in charge and possessed all executive, administrative, legislative and judicial powers therein. (See statute, *supra,* section 4.) Under the municipal manager form of government, wherein the prosecutor was a member of the governing body as councilman, the municipal council *as a body* possesses all administrative, judicial and legislative powers and duties as such. (See statute, *supra,* section 708.)

Many of the cases holding that re-election of a public official prevents his removal for acts done in a preceding term of office are reasoned out on the theory of condonation. We cannot subscribe to that theory because condonation, implying as it does forgiveness, connotes knowledge and in the absence of knowledge there can be no condonation. One cannot forgive something of which one has no knowledge.

The point that the findings were contrary to the evidence has no merit.

Now turning to the statute itself and construing it strictly, as we are in duty bound to do, we find no provision which prevents or disqualifies the prosecutor from holding office in the future for any delinquency or misconduct in the office which he previously held. If he is to be expelled under the powers conferred by the charter, it must be for misconduct or violation of the rules of the office which he now holds. No charge, affecting him as a councilman, has been sustained. The language of the statute will not support the conclusion that he may be expelled as a member of the council for corrupt conduct while a member of the commission under the Walsh act. We can only interpret the statute—not rewrite it. Much has been said on the moral side in support of expulsion of the prosecutor for acts thus previously done on the general proposition that he was an unfit person to hold public office. If the statute had been written that such offender be disquali-

fied from holding office in the future that would be an entirely different matter. The statute before us, however, cannot stand the construction that something done prior to the occupancy of the present office shall constitute cause for expulsion from the office such past offender now holds. *Jacobs* v. *Parham, supra.*

The cases *pro* and *con* may be found in 17 *A. L. R.* 279 *et seq.* See, also, cases collected in notes under *State* v. *Brickell,* 50 *Id.* 553.

In arriving at the meaning and scope of the statute under consideration, we hold, from the language of the section itself, that it was the legislative intent to limit the power of inquiry and expulsion to offenses committed while the offender is in the office in which the misdeeds were done (*Graham* v. *Jewell, supra*) because, as we view it, each term of office is a separate and distinct entity, and, applying the statute (section 20, *supra*) to the facts before us, we conclude that the resolution dismissing Walsh from the office of councilman of Trenton must be set aside.