THOMAS DALTON McCRADY V. STATE.

No. 29,861. June 25, 1958.
State's Motion for Rehearing Overruled
(Without Written Opinion) October 15, 1958.

*Lumpkin & Watson (Dean C. Watson,* of Counsel), Amarillo, for appellant.

*Wayne Bagley,* District Attorney, Amarillo, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is offering a bribe to an officer to permit a prisoner in his custody to escape; the punishment, two years.

Omitting the formal parts, the indictment reads as follows:

"* * * did then and there unlawfully, willfully, and corruptly offer to bribe Don Smith, who was then and there a legally qualified City Police Officer of the City of Amarillo, of said county, to permit a certain prisoner, then in the *lawful custody* of the said Don Smith, as police officer aforesaid; to escape; in this, the said Don Smith, as police officer aforesaid, did then and there have in lawful custody one Louise McBride, a prisoner;

and the said Thomas Dalton McCrady did then and there unlawfully, willfully and corruptly offer to give the said Don Smith the sum of One Hundred Dollars ($100.00) in money to permit said Louise McBride, prisoner as aforesaid, to escape from said custody * * * *."

The state's evidence reveals that Louise McBride was arrested on Thursday night at 10:35 P.M. for the offense of "vagrancy by prostitution" and was placed in the Amarillo city jail. At approximately 5:30 P.M. on Friday, the appellant offered Officer Smith, the booking officer at the jail, one hundred dollars to release Louise.

Appellant testified and denied that he made any such offer, but his principal ground for reversal is that, even if he made the offer, he violated no law because Louise was not in *lawful custody* at the time.

As shown above, the indictment alleged that Louise was in *lawful custody* and the court in his charge told the jury that in order to convict they must find that Louise was in *lawful custody*.

The state failed to prove a city ordinance authorizing the arrest of Louise without a warrant, and, so far as this record is concerned, the officers were without such authority, and the arrest was unlawful.

It was affirmatively established that Louise was confined in jail for approximately 17 hours after her arrest, 8 hours of which were during the normal working day of a non-holiday Friday, before the offer was made, and yet she was not carried before a magistrate in compliance with the terms of Article 217, V.A.C.C.P., which provides:

"In each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested before the magistrate who may have ordered the arrest, or before the nearest magistrate where the arrest was made without an order."

The Supreme Court of this state, in the landmark decision in Heath v. Boyd, 175 S.W. 2d 214, held that where Heath was arrested without a warrant and held by the officer who arrested him from one to three hours without taking him before a magistrate this constituted false imprisonment. Under this holding Louise was being falsely imprisoned.

In Moore v. State, 44 Texas Cr. Rep. 159, 69 S.W. 521 (1902), this court had before it a case, as in the case at bar, in which the accused was charged with attempting to bribe an officer. The court held that arrest was illegal and then said:

"It is made to appear that in order to bribe an officer, as contemplated by article 138, he must be in the discharge of a legal and official duty, and the custody of appellant, therefore, must have been a legal custody * * *."

The following year in Ex parte Richards, 44 Texas Cr. Rep. 561, 72 S.W. 838, the court said:

"* * * before the offer to bribe could be a violation of the statute, the arrest must be a legal one."

This rule was stated in another way in Johnson v. State, 49 Texas Cr. Rep. 250, 92 S.W. 257. In that case, the appellant was complaining about proof concerning the arrest of the person whose release was sought to be secured by the bribe, and the court held that such details were admissible, and said:

"The statute provides that, before one can bribe an officer to release a prisoner, such officer must have the prisoner in *legal custody* * * *. Therefore it became necessary to introduce all of this testimony to show that officer had Malinda Lewis in *legal custody*."

Some years later, in Hild v. State, 130 Texas Cr. Rep. 362, 94 S.W. 2d 733, this court held an indictment defective because it failed to allege that the officer "had legal custody" of the person whose release was sought by the bribe.

It is clear from the above that the rule is as follows: In a case where the accused is the person who gives or offers to give the bribe, it is incumbent upon the state to prove that the person whose release is sought by the bribe was in the lawful custody of the officer to whom the bribe was offered or given. This rule is well settled in this jurisdiction, and it becomes our duty to follow it.

The logic of the rule is that there is nothing legally wrong with an effort to secure the release of one held unlawfully, while, on the other hand, it is legally wrong for one holding another in his custody either lawfully or unlawfully to seek to extract

money from the person so held or from another upon a promise to release him. If the person is lawfully held it is the duty of the officer to continue to hold him, while if he is unlawfully held it is the duty of the officer to release him without remuneration.

Accordingly, the judgment is reversed and the cause remanded.

WOODLEY, Judge, dissenting.

The majority hold that under the facts revealed by this record the arrest of the prostitute Louise McBride was unlawful. To this holding I respectfully dissent.

Appellant's able counsel, in oral argument before this court, conceded that the arrest was lawful. The defense is predicated upon the contention, not that the arrest was unlawful, but that the girl's detention became unlawful because when the bribe was offered she had not been taken before a magistrate and seventeen hours had elapsed since her arrest.

The girl was arrested in a hotel in Amarillo by City Detective Rex Cole. At the time of her arrest she was clothed only in her underwear, and had just received $10 from a man. The marked bills were taken from her purse.

Just prior to her arrest Detective Cole, who was in the bathroom, heard the following conversation:

John: "I have a buddy that would like to see you."

The Girl: "No, wait until we get through."

The girl was taken to the police station, charged with "Prostitution and investigation of health" and placed in jail on January 24, 1957, at 10:35 P.M.

Until a few days before she was arrested the girl was employed as a waitress in appellant's cafe.

On January 25th appellant decided that he needed her back at the cafe; "needed her badly enough to go to the police station and try to pay a fine."

When appellant came to the jail on January 25, Police Offi-

cer Donald R. Smith was on duty as booking officer. Appellant fixed the time as earlier in the afternoon, but Officer Smith testified that the time was 5:40 P.M.

Appellant, having failed to arrange for the girl's release on bond, left $5.00 for her use, and while putting it in her purse, offered Officer Smith a one hundred dollar bill to release her.

Art. 474 C.A.P.C. provides, in part: "Whoever shall go into or near any public place, and shall * * * expose his or her person to another person of the age of sixteen (16) years or over, * * * shall be punished by a fine not exceeding Two Hundred Dollars ($200)."

Said Article 474 V.A.P.C. is found in Chapter 3 of Title 9 of the Penal Code. Title 9 relating to "Offenses against the public peace."

Art. 212 C.C.P. authorizes the arrest without warrant when an offense classed as an "offense against the public peace" is committed in the presence of the person arresting.

Art. 999 V.C.S. provides in part that it shall be the duty of the marshal of a city to arrest, without warrant, all violators of the public peace and all who shall be guilty of any disorderly conduct or disturbance whatever.

Art. 998 V.C.S. provides that police officers shall have like powers, rights and authority as are * * * vested in city marshals.

Art. 609 V.A.P.C. makes it the duty of every police officer to make complaint under oath to any officer empowered to issue criminal warrants, of all vagrants within their knowledge in their city, and provides a fine for their failure to do so.

Cook v. State, 155 Texas Cr. Rep. 580, 238 S.W. 2d 200, and Bennett v. State, 136 Texas Cr. Rep. 192, 124 S.W. 2d 359, are deemed authority for holding that the arrest of the prostitute by the officer who witnessed her assignation was lawful. In the Bennett case "disorderly conduct" was held to mean "offensive to good morals and public decency."

In McCrary v. State, 131 Texas Cr. Rep. 233, 97 S.W. 2d 236, the arrest of McCrary based upon an act of intercourse on his

premises in a parked car was held to be unlawful. However, this court disclaimed "any intention of holding that conduct of the character in question would not, under some circumstances, constitute 'an offense against the public peace' authorizing an arrest without warrant."

As to the detention of the prostitute following her lawful arrest, the writer is aware of no authority requiring or permitting the officer in charge of the jail to release the girl delivered to his custody because she was not taken before a magistrate. If she was not in lawful custody, just when, following her lawful arrest, did her custody become unlawful?

At what time did it become lawful for her employer to offer money to an officer as a bribe to secure her release?

Her arrest being lawful, the state was not required to prove that it continued to be lawful, such being the presumption until the contrary is shown. 18 Texas Jur. 23, Evidence Criminal Cases, Sec. 10.

There is nothing in this record to suggest that the prostitute did not waive the right to be taken before a magistrate sooner. She pleaded guilty a few days later and has made no complaint about any delay.

I respectfully dissent.