**Walter Bernard KORN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 39156.**

Court of Criminal Appeals of Texas.

March 23, 1966.

Rehearing Denied May 25, 1966.

See also, 400 S.W.2d 564.

Jones, Minton & Burton, by Roy Q. Minton, Austin, for appellant.

Thomas D. Blackwell, Dist. Atty., Philip A. Nelson, Jr., Asst. Dist. Atty., Austin, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is the unlawful possession of marihuana; the punishment, 2 years.

The state's evidence, admitted to the jury over objection that it was obtained as the result of an illegal arrest and search, shows that following his arrest for vagrancy appellant was taken to jail and during the booking procedure a marihuana cigarette was found in his shirt pocket.

The sole question presented is the legality of the arrest.

The evidence relating to the arrest heard by the court in the jury's absence shows:

Appellant was arrested in the parking area of the Mi Gran Lounge, in the City

of Austin, on January 30, 1965, at approximately 8:40 o'clock P.M., by Lieutenant George Phifer of the Austin Police Department.

Lt. Phifer had received information that there was a group of people known to have police records, including felony convictions, there and one of them (Overton) was supposed to be carrying a gun.

The police officers proceeded to the Lounge and while still outside Lt. Phifer saw appellant come from the Lounge and go to his car. Lt. Phifer knew that appellant had served time in the penitentiary and had been convicted for vagrancy. As recently as January 4, 1965, he had been arrested by Lt. Phifer and charged with vagrancy.

In answer to Lt. Phifer's questions, preceding and at the time of his arrest, appellant stated that he was not working and that there was nothing wrong with him that he could not work, and gave the same excuse he had given after his previous arrest on January 4, 1965, which was to the effect that he could not get a job that paid enough money to make it worth while.

There is no contention that the arrest of the appellant was on mere suspicion or that, from his knowledge and his conversation with appellant, the officer had no good reason to believe that appellant was able bodied; was without visible means of support and was unemployed, his only reason or excuse being that he could not get a job that paid enough money to make it worth while.

Art. 3, Section 46, of the Constitution of Texas, 1876, Vernon's Ann.St., provides: "The Legislature shall, at its first session after the adoption of this Constitution, enact effective vagrant laws."

Art. 607 Vernon's Ann.P.C., Sections (2) and (3), provide that (2) "Persons leading an idle, immoral or profligate life, who have no property to support them, and who are able to work and do not work," and (3) "[a]ll persons able to work, [who] have no property to support them, and who have no visible or known means of a fair, honest and reputable livelihood," are and shall be punished as vagrants.

Statutes enacted before and after the adoption of the Constitution of 1876 have declared an idle person who lives without any means of support and makes no exertion to obtain a livelihood by honest employment to be a vagrant.

Neither the present statutes nor any previous statute of this state have in terms provided that a vagrant may be arrested without a warrant.

On the other hand, both the state and appellant agree that no case has been found wherein this court has expressly held that vagrancy is not a breach of the peace or an "offense against the public peace," or has expressly held that a person cannot be arrested for vagrancy without a warrant whether there is an ordinance pursuant to Art. 214 Vernon's Ann. C.C.P. or not.

The state urges that the arrest of appellant for vagrancy was lawful under the Austin ordinance, authorized by Art. 214 V.A.C.C.P. under the holding of this court in Haller v. State, 72 Tex.Cr.R. 294, 162 S.W. 872.

Art. 214 V.A.C.C.P. provides:

"The municipal authorities of towns and cities may establish rules authorizing the arrest, without warrant, of persons found in suspicious places, and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

At the hearing in the jury's absence, the state introduced Section 1.10 of the Austin City Code, known as Suspicious Persons Ordinance, which reads:

"All policemen of the city are hereby authorized and empowered, in the exer-

732

cise of a sound discretion, to arrest without a warrant therefor any person found in a suspicious place, or any person found under circumstances reasonably tending to show that such person has been guilty of some felony or breach of the peace, or violation of some municipal ordinance, or about to commit some offense against some state law or against some municipal ordinance."

The state also contends that "vagrancy" is an "offense against the public peace" and the arrest was lawful under Art. 212 V.A.C.C.P., which provides:

"A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an 'offense against the public peace.'"

Appellant contends:

(A) That there is no statutory authority for the arrest of a citizen without a warrant for the offense of vagrancy, Art. 212 C.C.P. not being applicable because vagrancy is not an offense against the public peace and does not constitute a breach of the peace.

(B) The ordinance of the City of Austin enacted pursuant to Art. 214 C.C.P. authorizes a police officer to arrest without a warrant upon the following circumstances only, none of which are present in a vagrancy case or are shown by this record:

When a person is found: (1) in a suspicious place; (2) under circumstances reasonably tending to show that he has been guilty of some felony; (3) under circumstances reasonably tending to show that he has been guilty of some breach of the peace; (4) under circumstances reasonably tending to show that he has violated some municipal ordinance; (5) under circumstances reasonably tending to show that he is about to commit some offense against some state law; or (6) under circumstances

reasonably tending to show that he is about to commit some offense against some municipal ordinance.

Appellant would distinguish Haller v. State, 72 Tex.Cr.R. 294, 162 S.W. 872, cited by the state, upon the facts. In that case a woman was arrested "for vagrancy for being a prostitute" and the man found in bed with her, in a reputed house of ill fame, was arrested "for vagrancy for associating with a prostitute." These arrests without warrant were held by this court to be lawful arrests authorized by a Dallas ordinance.

The writer's views are that appellant's arrest was authorized by Art. 999 Vernon's Ann.Civ.St. and that we need not decide whether it was also authorized by Art. 212 V.A.C.C.P. or the Art. 214 V.A. C.C.P. ordinance.

Art. 998 V.C.S. relates to police officers of a city or town and provides in part that such officers shall have like powers, rights and authority as are vested in city marshals.

Art. 999 V.C.S. relates to the duties of the city marshal and provides in part:

"It shall be his duty to arrest, without warrant, all violators of the public peace, and all * * * who shall be guilty of any disorderly conduct or disturbance whatever * * *."

In Bennett v. State, 136 Tex.Cr.R. 192, 124 S.W.2d 359, the arrest was for drunkenness in a public place. "Drunkenness" was held to be "disorderly conduct," defined by Webster's International Dictionary to mean, among other things, "offensive to good morals and public decency, without law or order," and this court held that the arrest without warrant by a city policeman for such offense was justified, not under Art. 212 C.C.P., but under the broad powers given the city marshal and policemen under Arts. 998 and 999 V.C.S.

Insofar as it held that the arrest for drunkenness was not authorized by Art. 212 C.C.P., Bennett v. State, supra, was over-

ruled in Cook v. State, 155 Tex.Cr.R. 580, 238 S.W.2d 200.

The Supreme Court of Texas, in Pratt v. Brown, 80 Tex. 608, 16 S.W. 443 (1891) held, as this court later held in Bennett v. State, 136 Tex.Cr.R. 192, 124 S.W.2d 359, that the statute, now Art. 999 V.C.S., authorized a police officer of a city or town to arrest without warrant a person found drunk in a public place, though he was not otherwise creating a disturbance. In holding that drunkenness in a public place is per se "disorderly conduct" within the purview of the statute, the Supreme Court said:

"By his own voluntary acts he superinduced the necessity, or at least the cause, of his arrest. 'Disorderly' does not only mean 'confused,' or out of order, but also 'lawless,' or contrary to law. Webster. There is good authority for holding that 'any conduct which is contrary to law is within the definition of "disorderly conduct," as given by standard lexicographers.' State [ex rel. Tyrell] v. Jersey City, 25 N.J.Law [536], 541."

Pratt v. Brown was cited by the Supreme Court of Washington in City of Seattle v. Franklin, 191 Wash. 297, 70 P.2d 1049.

Among other cases cited by the Supreme Court of Washington was Walsh v. City Council of City of Trenton, 117 N.J.Law 64, 186 A. 818, where construing the phrase "disorderly conduct" as used in the city charter the court said:

"We consider any act which violates the Criminal Code is certainly disorderly conduct and more * * *."

The Washington court pointed out the distinction between disorderly conduct and conduct tending to disturb the public peace, in the following language:

"There is a difference between disorderly conduct and conduct tending to disturb the public peace. Disorderly conduct is a broader term than breaching or disturbance of the peace, because a person who commits a breach of the peace is necessarily guilty of disorderly conduct, but all disorderly conduct is not necessarily a breach of the peace."

The distinction between "an 'offense against the public peace'" and "disorderly conduct" is important in the case before us but only upon the question of whether the arrest of appellant for vagrancy was authorized by Art. 212 C.C.P. as well as the Art. 214 city ordinance, (both applicable where the offense is an offense against the public peace or a breach of the peace) or was authorized only by Art. 999 V.C.S. which vests in police officers of a city or town authority to arrest without warrant all who shall be guilty of any disorderly conduct as well as all violators of the public peace.

The writer is aware of no authority holding that Art. 999 V.C.S. does not apply to vagrants. The reasoning that Art. 609 P.C., which makes it the duty of law enforcement officers to make complaints against all vagrants, precludes a lawful arrest of a vagrant without a warrant by a police officer of a city or town, is supported by no authority.

There is authority to support a holding that vagrancy is "disorderly conduct."

■ "Except where the statutes manifest a contrary intention, vagrancy may ordinarily be considered disorderly conduct." 27 C.J.S. Disorderly Conduct § 1(2), p. 510.

The writer, in his dissent in McCrady v. State, 166 Tex.Cr.R. 509, 316 S.W.2d 408, directed attention to Arts. 998 and 999 V.C.S. and said:

"Cook v. State, 155 Tex.Cr.R. 580, 238 S.W.2d 200, and Bennett v. State, 136 Tex.Cr.R. 192, 124 S.W.2d 359, are deemed authority for holding that the arrest of the prostitute by the officer who witnessed her assignation was lawful. In the Bennett case 'disorderly conduct' was

held to mean 'offensive to good morals and public decency.'"

In Bennett v. State and in Pratt v. Brown, the attention of the legislature was directed to the fact that authority had been conferred (by Art. 999 V.C.S.) upon police officers of a city whereas like authority had not been granted sheriffs, constables or other elected and appointed officers.

We conclude that the trial court did not err in holding that appellant's arrest was lawful and the evidence obtained as the result of the search incident to such arrest was admissible.

The judgment is affirmed.

McDONALD, Presiding Judge (concurring).

I concur with Judge Woodley as to the disposition of this cause, in affirming the judgment of the trial court. However, I am not in accord with his reasoning in reaching the result.

I think this case should be affirmed under the provisions of Art. 212, V.A.C.C.P., wherein a peace officer is authorized to arrest without a warrant an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an *"offense against the public peace."* Haller v. State, 72 Tex.Cr.R. 294, 162 S.W. 872; Hackett v. State, 172 Tex.Cr.R. 414, 357 S.W.2d 391.

I further feel that the provisions of the Ordinance of the City of Austin, derived from Art. 214, V.A.C.C.P., are adequate to justify an affirmance of this conviction.

The only real distinction between the two foregoing provisions that is, Art. 212, supra, and the Austin Ordinance, is that the statute says, "against the public peace", and the Ordinance says "breach of the peace".

Judge Woodley in effect says "disorderly conduct" is the reason for the arrest without a warrant. I cannot agree with the New Jersey decision cited in his opinion

wherein the conclusion is reached that "all disorderly conduct is not necessarily a breach of the peace."

While I adhere to the early decision of this Court and the pronouncement therein in the case of Ex parte Strittmatter, 58 Tex. Cr.R. 156, 124 S.W. 906, holding the vagrancy statute constitutional, I am not unmindful of the dissenting opinion of Mr. Justice Douglas as recently as February 28, 1966, in the case of Hicks, Petitioner v. District of Columbia, 86 S.Ct. 798, wherein Mr. Justice Douglas expressed his view that a statute defining "vagrant" was unconstitutional. I am content to follow the precedents announced by this Court until such time as the Supreme Court of the United States hands down an opinion to the contrary. I do not feel that the case of Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888, is in point to the extent of successfully supporting an attack upon the constitutionality of our "vagrancy statute", and declaring it unconstitutional.

I concur in the affirmance of the judgment of the trial court.

MORRISON, Judge (dissenting).

Vagrancy statutes by their very nature place an awesome responsibility on the police officer patrolling a beat. Such statutes authorize the arrest of a man because of his status, as opposed to arrest for a singular overt act in violation of public order, and for this reason, these laws demand the utmost discretion in their application.

An affirmance of this conviction would authorize any police officer to arrest without a warrant and without probable cause any man who has had prior difficulty with the law. This far I refuse to go.

All that the officer observed prior to this arrest was that appellant walked from the front of a tavern to his automobile. There was no suggestion that appellant was intoxicated.

Article 609, V.A.P.C., provides that it shall be the duty of the law enforcement personnel named therein *to make* a complaint under oath *to an officer empowered to issue criminal warrants*, of all vagrants. Such article makes it a misdemeanor for an officer to fail to comply therewith.

Williams v. State, Tex.Cr.App., 394 S.W. 2d 510, squarely supports the holding that the arrest in this case was unlawful.

I respectfully dissent.