## NELSON PRATT V. JOHN C. BROWN, RECEIVER.

### No. 6780.

1. **False Imprisonment — Justification.** — In an action for damages against a railway company or its receiver for false imprisonment, the act being calling a police officer and causing him to take the plaintiff into custody, the plaintiff being drunk and in a public depot, *held*, if the act of the officer in the matter was legal it would follow that if the defendant through its servant abetted the policeman such act would also be justifiable.

2. **Arrest Without Warrant—Common Law.**—By the common law officers who by virtue of their office are conservators of the peace have the right to arrest without warrant all persons who are guilty of a breach of the peace or other violation of the criminal laws committed in their presence. The arrest however must be made at the time of the commission of the offense.

3. **Same—Statutes Construed.**—Article 363 of Code of Criminal Procedure provides among other duties of a city marshal and his deputies that he "shall arrest without warrant * * * all who are guilty of any disorderly conduct or disturbance whatever." Article 144a of Penal Code declares that "any person who shall get drunk or be found in a state of intoxication in any public place shall be deemed guilty of a misdemeanor," etc. A railway depot waiting room where the public constantly resort ought to be considered a public place. It follows therefore that under the statute a policeman would have authority at such place to arrest a drunken man if guilty of disorderly conduct by being intoxicated.

4. **Drunk — Intoxication.** — See facts held to be conclusive evidence that the plaintiff was drunk and found in that condition in a public place.

5. **Disorderly Conduct—Drunkenness in Public.** — Drunkenness in a public place is *per se* "disorderly conduct" within the meaning of article 363 of Code of Criminal Procedure.

6. **Causing Lawful Arrest.**—If the arrest when made was lawful and caused by agent of the railway company, and the police officer or city authorities kept the accused in confinement for a longer time than was lawful, neither the agent nor the railway company would be responsible for the wrong in such confinement.

APPEAL from Grayson. Tried below before Hon. H. O. Head. The opinion states the case.

*C. H. Smith, C. B. Randell,* and *W. W. Wilkins,* for appellant.—The court erred in rendering judgment for the defendant, because the facts found by the court showed that the plaintiff was illegally arrested and imprisoned; that he was arrested without a warrant; that his arrest and imprisonment were unnecessary to accomplish the end sought, to-wit, his removal from the defendant's premises and not for drunken-

ness; that excessive and unnecessary force was used by the defendant's agent and his coadjutors, the police of the city of Bonham, to accomplish the private and individual purpose of the defendant; and that the action of the defendant's agent aided by the police constituted false imprisonment of plaintiff and an unwarranted invasion of his legal rights, and he was entitled to recover damages therefor. Const., art. 1, sec. 19; Ct. App. C. C., secs. 1722, 1723, 1725, 1726; Hubbard v. Lord, 59 Texas, 384; 2 Lacy's Dig. Railway Law, p. 257, secs. 9, 16; Id., p. 863, secs. 14, 15; Lynch v. Railway, 90 N. Y., 77; 3 Suth. on Dam., 731, *et seq.*

*Bryant & Dillard*, for appellee.—If the court was in error as to the ground upon which he placed his decision, yet was there no error in the decision; for the finding of facts showed that plaintiff was a trespasser upon defendant's premises and that defendant's agents had been unable to remove him; and they therefore had the right to call in all necessary help to remove him, and it was a matter of indifference whether the help called in were policemen or other persons. Harris v. Stephens, 75 Am. Dec., 337; Johnson v. Railway, 8 Am. and Eng. Ry. Cases, 206; Summitt v. The State, 41 Am. Rep., 638; Langregin v. The State, 25 Am. Rep., 546; The Commonwealth v. Power, 41 Am. Dec., 455.

MARR, JUDGE.—This action was brought by the appellant, as plaintiff in the court below, to recover damages of the defendant for false imprisonment. He alleged that the agent of the defendant, acting within the scope of his authority, wrongfully and maliciously caused plaintiff to be illegally arrested without warrant by a policeman of the city of Bonham and ejected from defendant's depot and imprisoned in the city prison for a night and day. Defendant in effect and *inter alia* justified the acts of its agent by pleading specially that the arrest and imprisonment were legal, for the alleged reasons that plaintiff when arrested was violating both the laws of the State and the ordinance of the city of Bonham. It was charged that he was when arrested a trespasser, and also in a state of intoxication in a public place.

The case was tried before the court without a jury, and judgment was rendered in favor of the defendant, from which plaintiff appeals. He assigns as error the action of the court in holding that his arrest and detention were legal. This is the substance of all of the assignments.

There is no statement of facts in the record, but the transcript contains the judge's conclusions of law and fact. The conclusions of fact are as follows, viz.:

"I find that defendant is a receiver of the Texas & Pacific Railway Company, as alleged in plaintiff's petition. That on the — day of August, 1888, the plaintiff entered the waiting room at defendant's depot

in the city of Bonham, Texas, to come as a passenger on its next train for Sherman. This was almost 7 o'clock in the evening, and the train upon which plaintiff intended to take passage left Bonham for Sherman at 9. At the time plaintiff so entered defendant's depot he had been drinking and was under the influence of intoxicating liquors to a considerable extent, and in a short time he lay down on one of the seats in the waiting room and slept until the train reached Bonham, when he was awakened by one of defendant's employes and asked if he desired to leave on that train, when he declined to do so, and again went to sleep. ' A short time after the train had left he was again aroused by one of defendant's employes and notified that the next passenger train to Sherman would not leave until after 1 o'clock the next day, and that it was against the rules of the company for him to spend the night in the waiting room, and that it would be necessary for him to leave the same. This the plaintiff declined to do, and insisted upon remaining in the depot until taking passage on the cars for his destination. After several requests and notifications to leave on the part of defendant's agent, and as many refusals to do so by plaintiff, said agent sent for a policeman and requested him to take charge of plaintiff. Nothing was directly said as to what the policeman was to do with plaintiff, nor as to the offense, if any, with which he was charged, but it was understood both by said agent and policeman that the plaintiff would be put in the city prison, commonly called the 'calaboose.' When the policeman's attention was called to plaintiff he had again gone to sleep upon one of the seats, and when aroused and notified of his arrest he insisted upon his right to remain until the arrival of his train. At this time there was no sign of intoxication on the part of plaintiff other than his being asleep as above described. He was, however, taken in charge by the policeman and placed in the city prison, where he remained until about the middle of the next evening, when he was released from custody without any complaint having been filed against him. At the time of plaintiff's arrest the city of Bonham was incorporated under the general charter for cities of over one thousand inhabitants, and at the time there was an ordinance of said city in force punishing trespassers upon the property of others, a copy of which is attached to defendant's answer."

The ordinance of the city of Bonham, pleaded and introduced in evidence, and to which the court refers above, is to the following effect: "That if any person shall enter or intrude upon the premises of another without his consent he shall be fined not exceeding $10."

There was no ordinance shown enacted by said city authorizing, as might perhaps have been done, arrests without warrants for the offense before defined. Code Crim. Proc., art. 228; 1 Texas Ct. App. C. C., sec. 463. Neither was it proved that the city of Bonham had ever passed any special law punishing drunkenness in a public place. The court

below in effect held that the arrest was legal, because the defendant was violating the before mentioned ordinance and also the general law of the State on the subject of drunkenness, and particularly that under article 363 of the Revised Civil Statutes he could be legally arrested without warrant for the commission of the offense denounced by said ordinance. We are not certain that this latter conclusion of the court is correct under the facts disclosed by the record and in our view of the law. Without deciding that point, however, we pretermit the question and proceed to determine whether the arrest was legal on the other ground, viz., drunkenness in a public place. If the acts of the policeman in the matter were legal, it would follow that those of the defendant through its servant in abetting him were likewise legal and justifiable. We will discuss, therefore, the duty and the authority of the policeman.

A policeman of an incorporated town or city is, under the general laws of the State, a peace officer and a conservator of the peace "within his jurisdiction. He shall arrest all offenders without warrant in every case where he is authorized by law, in order that they may be taken before the proper magistrate or court and be brought to punishment." Code Crim. Proc., arts. 44, 45; Penal Code, art. 253. By article 363, Revised Statutes, he is given in effect (among other powers hereafter to be noticed), in order to prevent crime and preserve order, the general powers possessed by sheriffs under the State laws. The power is expressly given to the marshal and his deputies, but we think that a policeman should be regarded as a deputy in the meaning of this article.

The sheriff is required to "arrest all offenders against the laws of the State in his view or hearing and take them before the proper court for examination or trial." Code Crim. Proc., art. 49; Penal Code, art. 253, *supra*.

It must appear, we think, to justify this arrest (there being no affidavit before any court or warrant of arrest issued charging plaintiff with a crime) that he was guilty of the offense of drunkenness in a public place as defined by law, and also that the circumstances existing at the time of the arrest, as well as the nature of the offense, were such as under the law authorized the arrest without warrant. Giroux v. The State, 40 Texas, 104, 105.

We have collated the foregoing provisions of the statutes as having more or less weight in the solution of the questions involved, and will presently advert to others more closely connected with the subject. In the case of Scircle v. Neems, 47 Indiana, 289, to which we call special attention, the Supreme Court of that State attached much importance to similar provisions of law in a suit identical in all of its prominent features with the present controversy. It was there held that a city marshal as a conservator of the peace and the good order of the com-

munity could arrest without warrant for the offense of drunkenness, committed in his presence or view, and could imprison without a commitment the offender during the night while the latter was still intoxicated, although there was no express provision of law authorizing arrests in such cases without warrant.   This decision was approved in effect by the Court of Appeals in this State in the case of Beville v. The State, 16 Texas Court of Appeals, 70.   No little difficulty, however, has been experienced from the fact that the Court of Appeals, whose peculiar province it is under the law to construe criminal statutes, has by an almost unbroken line of decisions held that arrests without warrant could only be made in the instances specially named in the codes, and drunkenness in a public place is not one of the enumerated offenses in the absence of municipal regulations to that effect.   Code Crim. Proc., arts. 226–229; Johnson v. The State, 5 Texas Ct. App., 43; Lacy v. The State, 7 Texas Ct. App., 403; Staples v. The State, 14 Texas Ct. App., 138; 2 Willson's Crim. Stats., arts. 1723, *et seq.*, notes.   A doubt of the correctness of these decisions in every particular is suggested by the recent decision of that court in the matter.   Ex Parte Sherwood, 29 Texas Ct. App., 334.

In any event we are convinced that chapter 1 of title 5 of the Code of Criminal Procedure does not enumerate all of the instances in which arrests may be lawfully made without a warrant.   It may be, as suggested by Hurt, J., in Sherwood's case, *supra*, that if in any given case of arrest without warrant the authority shall be found not to be embraced in any of our statutory provisions "we are relegated to the common law."   This view of the law is doubtless inspired by article 27 of the Code of Criminal Procedure, which makes the common law the rule of procedure "in any particular state of case" not provided for by the code.   By the common law, "officers who by virtue of their office are conservators of the peace have the right to arrest without warrant all persons who are guilty of a breach of the peace or other violations of the criminal laws *in their presence.*"   "The arrest," however, "must be made at the time of the commission of the offense."   1 Am. and Eng. Encyc. of Law, 734, and notes; 1 Russ. on Crime, 808.

This would seem to authorize an arrest without warrant for the offense of drunkenness in a public place by any conservator of the peace when the offense is committed in his presence.   We are not called upon, however, to decide whether, for example, a sheriff can ordinarily arrest without warrant for this offense when committed in his county and in his view, but we may remark that if he can not, the Legislature ought to expressly confer the authority upon him for the maintenance of peace and good order.   We by no means hold, however, that he has not the authority.   In our view of the laws of this State we do not think that we shall be compelled to confine ourselves to the common law, however ample that may be, for authority to hold that an arrest for this offense may be

made without warrant by the peace officers of an incorporated city when the offense is committed in their view or presence. Article 363 of the Revised Statutes, to which we have already referred, provides, among the other duties of the city marshal and his deputies, that he "shall arrest *without* warrant all who are guilty of any *disorderly conduct* or disturbance whatever."

Article 144a of the Penal Code declares that "any person who shall get drunk or be found in a state of intoxication in any public place shall be deemed guilty of a misdemeanor," etc. Was the plaintiff guilty of the offense denounced by this article? A railway depot waiting room where the public constantly resort ought to be held to be "a public place." Murchison v. State, 24 Texas Ct. App., 8. Was the plaintiff drunk? We have not the slightest doubt that he was. Under the facts found by the court below he was not only drunk, but in the expressive language of the police court he was "drunk and down." He was clearly in a state of intoxication when he entered the depot, as expressly found by the court. Was he in that state when arrested? It is evident to our minds that he was still drunk after his nap of about two hours which he had taken on one of the seats appropriated by him as a sleeping place. Otherwise, when awakened and informed that his train had arrived, why did he not take it and proceed on his journey? A short time after this the policeman arrested him. In the meantime he had laid down again and returned to sleep. In the absence of some explanation (none being afforded by the record) of his whole conduct on that occasion, we regard that conduct as perfectly consistent with drunkenness and inconsistent with sobriety. It will be seen that drunkenness as defined is somewhat a continuing offense. If "found in a state of intoxication," etc., the offense is complete. Once drunk, the individual remains drunk until he becomes sober. There does not appear to be any recognition of comparative degrees of drunkenness. It makes no difference whether it is a new "drunk" or the same old "drunk," he is amenable to the law if found in that condition in a public place. Now, as the defendant was drunk a short time before he was arrested, and there is nothing to show that he had in the meantime become sober (but quite the contrary, as it seems to us), we naturally conclude that he was still drunk and "found by the officer in a state of intoxication." Therefore the offense was committed in the view or presence of the officer, which is one of the qualifications ordinarily, we think, to the right to arrest without warrant. (See statutes and authorities before cited.) We certainly could not say that the findings of the court below do not warrant the above conclusions of fact. It is our duty to sustain the judgment below, unless it is contrary to and unsupported by the facts as found by that court. It remains to determine whether drunkenness in a public place is *per se* "disorderly conduct" within the purview of article 363. We think

that it is, although the individual is not otherwise creating a disturbance. In ninety-nine cases out of a hundred perhaps he creates one unless timely arrested and restrained. An individual who is in a state of intoxication, improvises a bed and retires to sleep (and before bedtime at that), and at a place where the traveling public, including ladies and children, usually resort for the purpose of taking the train, is most evidently not in good order or acting in an orderly manner. Lying down and falling asleep on the seat may not be unusual or even wrong—that depends on circumstances—unaccompanied by public drunkenness. But the plaintiff was drunk on that occasion and at that place. By his own voluntary acts he superinduced the necessity, or at least the cause of his arrest. "Disorderly" does not only mean "confused" or out of order, but also "lawless" or contrary to law.—*Webster*. There is good authority for holding that "any conduct which is contrary to law is within the definition of disorderly conduct as given by standard lexicographers." The State v. Jersey City, 1 Dutch. (N. J.), 541.

We are clearly of the opinion that drunkenness in a public place is disorderly conduct in contemplation of law and of article 363 of the Revised Statutes. Beville v. The State, *supra*. We have already shown that it is the duty of policemen as "peace officers" to execute the penal laws of the State. It follows that the arrest of the plaintiff without warrant was under the circumstances lawful. The subsequent imprisonment, at least during the balance of the night, or as long as the plaintiff remained too intoxicated for trial (if so) was likewise not illegal. Scircle v. Neems, 47 Ind., 289, *supra;* Code Crim. Proc., art. 230. The defendant's agent, however, only caused the arrest of the plaintiff and consented to his being taken to the city prison, or, drawing the strongest inference against the defendant, instigated this being done. But there his acts ceased, and the arrest and imprisonment that night were both legal, as we have seen. But it may be said that he ought to have been either promptly tried or released on the ensuing morning, and that any further detention was illegal and false imprisonment. This may be correct or not, according to the circumstances. Neither the defendant nor its servant, however, is responsible for that. The agent did not request or insist on such detention, or proceed any further in the matter after the arrest. The defendant is not responsible for the independent acts of the city officers. Had the arrest and imprisonment been illegal in the first instance, the defendant might have been liable for all the subsequent acts and consequences of imprisoning the plaintiff until the termination of the transactions. Why the plaintiff was not prosecuted is not disclosed by the record. It may have been due to the leniency or dereliction of duty on the part of the officer. This was certainly not an injury to the plaintiff, and is wholly imma-

terial as affecting the liability of the defendant.    There was no trespass committed upon the person of the plaintiff for which the defendant is responsible in law.

We conclude that the judgment should be affirmed.

*Affirmed.*

Adopted April 28, 1891.