THOMAS JOSEPH FORD *vs.* OCEANIC STEAMSHIP COMPANY.

July 26, 1907.

*Arrest without warrant—Legality:*     An arrest of a sailor on board of his ship lying in the port of Honolulu by an officer without a warrant, in consequence of the request of the chief officer, is illegal under the Hawaiian law and common law.

*Same:*     In such a case, the fact that the chief officer told the policeman that "there is a disturbance aboard" and pointed out libelant as the man making it, does not make the arrest legal, where the policeman neither saw nor heard of the circumstances of the disturbance, but if he had been told of the circumstances of the disturbance, which he had not seen, and from such narration had found reasonable cause to suspect the guilt of libelant and had arrested him because of such suspicion, the arrest would be legal.

*Same:*     The right to arrest without a warrant is an exception to the general rule and the conditions under which it is allowed must exist,—and the methods under which it is carried out must be strictly followed to make it legal.

*First officer in charge of a vessel—Authority:*     The first officer was in charge of the ship *de facto,* the master did not appear in connection with the matters testified to, nor was there any intimation that he was on board *Held,* that the first officer rightfully represented the owner.

*Liability of one causing arrest for extension of imprisonment:*     The arrest being illegal, and the ship going to sea immediately after with the possible witnesses in the case, leaving libelant in imprisonment, the libellee is liable for extension of the imprisonment, which may have been due to negligence of the police.

*In Admiralty*:     Libel *in personam* for damages for illegal imprisonment.

*J. J. Dunne* and *Geo. D. Gear,* Proctors for Libelant.
*Kinney, McClanahan & Derby,* Proctors for Libellee.

DOLE, J. This is a libel *in personam.* The libelant was a fireman on the Ventura, one of the vessels of the libellee, and engaged as such during the month of June, 1906, for a voyage from San Francisco to Honolulu, Pago Pago, Auckland, Sydney and return by the same route, at wages fixed at fifty dollars a month and board and lodging reasonably worth twenty dollars. The libel alleges that on the 28th day of June, when the Ventura was lying in the port of Honolulu in the prosecution of said voyage, the libelant was illegally and without reasonable or probable cause, arrested by the libellee on board said vessel and taken ashore and confined in prison for a period of five days without any charge being preferred against him in any court, and that he finally regained his liberty through a writ of *habeas corpus;* that during such imprisonment the said vessel Ventura continued her voyage leaving him behind and carrying away with her his clothing and personal effects worth fifty dollars, and without paying him any wages, whereby he lost such effects and was deprived of the two months' wages which he otherwise would have earned.

The libellee seeks to justify the arrest on the ground that the libelant was drunk, disorderly and riotous during his watch and interfered with the work of the ship, and alleges that the officer arresting libelant was distinctly informed of the nature of the charges against him.

I have no difficulty in finding that the libelant was under the influence of liquor at the time of, and previous to, his arrest. which was shown by the development of a quarrelsome tendency in the discussion of certain subjects of general interest in which he was disposed to enforce his arguments by some kind of belligerent demonstration. When the policeman was first sent for, he found on his arrival that the libelant was sitting at the table in the mess room, quietly eating. The first officer pointed him out as "the man" and he arrested him, but upon

allowing him to go away to put on his shoes and coat he failed to find him again, and returned to the police station. He was later sent for and went down this time with three other officers, expression having been made that the libelant's associates on the ship might interfere with his arrest. Upon his second arrival he found the libelant in his bunk, lying down quietly, and arrested him and took him ashore.

The first question is the consideration of the legality of the arrest. In the arrest of a person without a warrant, the burden of proof is with the person arresting or causing the arrest to show that the arrest was lawful. *Barker v. Anderson,* 81 Mich. 508, 511-512.

Section 2766 of the Revised Laws of Hawaii provides that officers in any seaport town even where it is not certain that an offense has been committed "may, without warrant, arrest and detain for examination such persons as may be found under such circumstances as justify a reasonable suspicion that they have committed or intend to commit an offense." If the policeman, Kaaua, arrested the libelant because of the request of the first officer of the Ventura, and not because he found him under circumstances which justified a reasonable suspicion that he had committed or intended to commit an offense, the legality of the arrest may well be questioned. Kaaua's testimony shows explicitly that he arrested libelant solely on the orders of the chief officer of the Ventura and with no particular idea of the offense for which he was arresting him, and that he saw and heard nothing and knew of no circumstance to justify a reasonable suspicion that he had committed an offense. Although he may have believed the chief officer as to a disturbance by someone, and the libelant was pointed out afterwards as the man referred to, yet, if he saw no conduct and knew of no facts or circumstances which were reasonably accepted by him as grounds of suspicion, the arrest was not within the Hawaiian statute. He says, "I believed what the first officer said to me," which was "there is a fellow aboard making a disturbance," also that the man was interfering with the work of the ship, making trouble among the men, but that

16—D

he arrested Ford because of the instructions to do so by the chief officer who said that he would come up afterwards and make a complaint. There is no testimony in the case showing either that Kaaua saw any acts or misconduct on the part of the libelant or heard of any, except the general statement that there was a disturbance on board and that Ford was the man. Such general statement is not information which brings the case within the law. *Hopkins v. Crowe,* 4 Ad. & El. 774, 778. The chief officer testifies that he informed Kaaua that Ford was raising a disturbance and was drunk and that he wanted him locked up and that he also telephoned this to the police station and was answered "all right." He could not remember saying to the policeman that he would be up in the morning but he did not say that he did not say so. His evidence is an admission that he instructed Kaaua to arrest the man and have him locked up on the general charge of drunkenness and riotous conduct, and this the chief officer did not know about of his own knowledge but was informed of it by one of the engineers.

The court in the case of *Rich v. McInerny,* 103 Ala. 345: 15 So. 663, 666, under a statute similar to ours, discusses this point exhaustively, from which I quote the following: "If he acted upon the command or request of another, without which he would not have made the arrest, the act cannot be legally considered as resulting from the reasonable belief of guilt. We do not mean to intimate that the officer's information, which will give him reasonable cause of belief, justifying the arrest, on his part, may not be derived from another, who may at the same time command or request him to make the arrest. We wish it understood that the distinction we draw is that the command or request must not be the moving cause of the officer's act, but his act must proceed alone from his reasonable cause of belief of the party's guilt, based upon his information of facts touching guilt, howsoever derived." See also, *Hopkins v. Crowe,* supra, and *Wheeler v. Whiting,* 9 C. & P. 262.

Section 2767 of the Revised Laws requires a person arrest-

ing another without a warrant to inform him upon what charge he is arresting him. Kaaua did not inform libelant why he arrested him and explains his failure to do so on the ground that he was arresting him on the orders of the chief officer who knew what had happened and would come up and enter a complaint.

I find that the libelant was arrested solely on the request of the chief officer and in the absence of circumstances that justified any reasonable suspicion on the part of the arresting officer that he had committed or intended to commit an offense—in other words, the influence which led him to make the arrest was the request of the chief officer rather than the knowledge of any circumstances which led his mind to a reasonable suspicion of the libelant's guilt; and that he did not tell him upon what charge he was arresting him. The right to arrest a person without a warrant is an exception to the general rule, and the conditions under which it is allowed must exist,—and the methods of making such arrest must be strictly followed, to make it legal. The liberty of a person is too important a matter to the state to be interfered with without the sanctions with which the law guards such invasions. The safeguards which have been thrown about the right to arrest without a warrant have been thrown aside in this case. The arrest was illegal.

The case of *Baltimore & O. R. Co. v. Cain,* 28 L. R. A. 688, 691, is extensively quoted in libellee's brief in support of a different view of the law. In that case the plaintiff's conduct on a passenger train was such that he might have been legally expelled from the train had the conductor had force sufficient to do this, or he might have been legally arrested by the conductor on the charge of a breach of the peace, and handed over to a constable at some station, or he might at some station have informed some constable of the circumstances of his misconduct, and if the constable had upon such information, feeling that he had a reasonable ground to believe that the plaintiff was guilty of a breach of the peace, arrested him upon such a charge, with or without a request to do so, such arrest would

have been legal under the common law, if not under the Hawaiian statute. What the conductor did was to telegraph from a waystation for an officer to meet the train at the next stopping place and arrest the plaintiff, and when the train arrived the conductor pointed the plaintiff out to the officer who then and there arrested him and took him to the station house. The jury was charged, among other things, ·that if the conductor directed the officer to arrest the plaintiff for such disorderly conduct, their verdict should be for the defendant. This conclusion of law is not according to the authorities relied on in the case before the court and not according to my view of the common law or the application of the Hawaiian statutes to the circumstances of this case. In *Hopkins v. Crowe,* supra, Lord Denman said, "The ninth section applies only to an owner or peace-officer himself seeing the nuisance of cruelty committed, or having information of it from another person, as directed by the statute. But the information meant is not the kind of communication made in this case: it is to be a substitute for view. To say, 'I charge this person with cruelty to the horse,' is giving no information." So the chief officer's remark to Kaaua, "there is a fellow aboard making a disturbance," followed by pointing out the libelant with the words "that is the man," is giving no information which Kaaua might weigh and through which reach a reasonable suspicion of libelant's guilt. See also, *Wheeler v. Whiting,* supra.

As to the libellee's contention that the first officer was without authority to act if the master was aboard, the libel failing to allege his absence, the circumstances shown by the evidence, including the assumption of control by the chief officer, raise a strong presumption that he was in charge of the ship during all the time covered by the testimony; it does not appear that the master was present at any part of such time. The cases referred to as cited in the reference to the Encyclopaedia of Law (vol. 20, p. 204) are limited to questions of bodily punishment of, or assaults on, seamen and the authority of subordinate officers to inflict the same. The evidence, I think, justifies

the conclusion that the chief officer was rightfully representing the libellee. *Welsh v. Cochran,* 63 N. Y. 181, 184.

The libellee contends that if it is liable to the libelant for damages for the arrest and consequent imprisonment, it is not liable for his "extraordinary detention through the neglect of the police department," and cites *Pratl v. Brown,* 80 Texas 608, 614, which contains the following: " Had the arrest and imprisonment been illegal in the first instance the defendant might have been liable for all the subsequent acts and consequences of imprisoning the plaintiff until the termination of the transactions." Other authorities,—*Welsh v. Cochran,* supra, and *Baker v. Secor,* 4 N. Y. Supp. 303, take a different view. This arrest has been found to be illegal. It was a case in which the only witnesses obtainable against the plaintiff belonged to the ship's company. These were carried to sea by the libellee before there was an opportunity to try the plaintiff or even to subpoena such witnesses. The practice of the ship as intimated by the chief officer in his testimony, of having men locked up as drunk and disorderly at any port, in any part of the world, and leaving them to their fate, is indefensible in common law countries. It is a proceeding instituted by a layman to imprison another without trial or judgment for a day or part of a day, and as much longer as official negligence may allow. In this case it was that and more, for it included a discharge of the libelant in violation of the law, although a record of discharge was entered the next day by the purser. I feel that the rule laid down by the Texas case applies in this case and that the libellee is liable, not only for the arrest and imprisonment but for the negligent extension of the imprisonment as well.

A decree may be entered in favor of the libelant in the amount of three hundred ($300) dollars, made up as follows:

| | |
|---|---|
| Two months' wages | $100.00 |
| Seven weeks' board | 35.00 |
| Personal effects | 40.00 |
| Damages for arrest and imprisonment | 125.00, |

with costs.