## CITIZENS HOTEL CO. v. FOLEY et ux.

### No. 13924.

Court of Civil Appeals of Texas. Fort Worth.

June 16, 1939.

Rehearing Denied Sept. 8, 1939.

Bryan, Stone, Wade & Agerton and Geo. W. Parker, Jr., all of Fort Worth, for appellant.

R. T. Thornton and G. L. Robertson, both of Fort Worth, for appellees.

SPEER, Justice.

Appellees, Jesse Foley and his wife, Bertha Foley, sued appellant, Citizens Hotel Company, a corporation, in the District Court of Tarrant County, Texas, for damages alleged to have been sustained, growing out of the false arrest and imprisonment of the wife, Bertha Foley. The appellant is alleged to have acted by and through its house detective, Bob Lentz, while engaged in the service of appellant, and in an attempt to perform the duties for which he was employed.

From the petition it appears that Bertha Foley was a negro maid, employed by appellant to care for certain guest rooms on the eighth floor of appellant's hotel. A guest of the hotel, occupying one of the rooms on that floor, reported to the manager the loss by her of $35. That Lentz, the house detective, and two city police officers accosted Bertha and accused her of the theft of the money. That they took her in custody to the room where the money was reported to have been lost, and there unlawfully restrained and imprisoned her. That at the instance of Lentz, Mrs. Ruth Alford, the housekeeper for appellant, was called and requested to have Bertha remove her clothing and to search her for the lost money. That Bertha protested against her detention and denied her guilt in connection with the theft.

Further allegations were made in this language: "That at the conclusion of the fruitless search for the alleged stolen money, the plaintiff, Bertha Foley, was turned over to the said city police officers of the City of Fort Worth, and was by them conveyed to the city jail in the City of Fort Worth, and by them held as a prisoner from approximately 11:30 o'clock A. M. on said date until 4:00 o'clock P. M. on the same date. That during this time the said Bertha Foley was thus falsely, unlawfully and forcibly detained and imprisoned against her will and without her consent

under the direction of the defendant, its agents, servants and employees, the latter acting within the scope of their authority and employment at all times mentioned herein. That after having been so imprisoned for several hours against the will and consent of the said Bertha Foley, she, the said Bertha Foley, under the direction of the defendant and its hereinabove agents, servants and employees, was released and discharged from such false imprisonment at 4:00 o'clock P. M. on said date, and she, the said Bertha Foley, was advised by one of the policemen that the money had been found."

Allegations were made that Bertha Foley, when arrested and taken to jail, was required to walk through the hotel lobby, where other employees could see her in custody of an officer; that each and all of said acts humiliated her and injured her reputation and character as a good and honest servant; that the wrongful treatment caused her nervous pain and suffering; she prayed for $1,500 actual damages and a like amount as exemplary damages.

The appellant, Hotel Company, answered by general denial and special pleas. The latter consisted of denials that its house detective arrested or falsely imprisoned appellee; that after a loss of money had been reported by a guest, Lentz made an investigation and concluded appellee was the only person in possession of a pass key to the room, and that the questioning of appellee and the search by the housekeeper was not against appellee's will, but with her consent. That Lentz reported the occurrence to city officers, who made an investigation of the facts surrounding the loss, and if Bertha Foley was arrested by any one, it was by the city policemen, in a lawful and legal manner. Appellant specially plead the provisions of City Ordinance No. 512, giving police officers in the City of Fort Worth the right to arrest without warrant, when, in their discretion, they found persons in suspicious places under circumstances reasonably tending to show they had or would violate some municipal ordinance. It also plead Fort Worth City Ordinance No. 321, which makes it unlawful for any person to take up and use the property of another without the owner's consent. It further alleged that at the time appellant was taken into custody by the city officers, she was found under circumstances which authorized her arrest by them.

The case was tried to a jury on special issues. The verdict returned prompted the court to enter judgment for appellees for $250. New trial was denied appellant; hence this appeal.

It appears from the record before us that the circumstances which brought about the arrest and imprisonment of Bertha Foley were that a Mrs. Edmonson, who lives in Louisiana, was a guest in appellant's hotel, occupying room No. 801. Mrs. Edmonson was not present and did not testify at the trial, but her report to the hotel manager, of having lost $35 from her room, was testified to by the house detective, without objection on the part of appellees. Acting upon her statement that she had wrapped the money, with her railroad ticket, in a towel, and put it under her pillow, about 9 o'clock in the morning, and went down to breakfast, and upon her return found the money was not in the package, the house detective, as was his duty, began to make an investigation among the employees who had access to pass keys to the room. He found that several keys were out which would enable persons to enter the room, but that one was carried by him, another by the manager, another was kept in the linen room, to which only the housekeeper had access, while another was at the room clerk's desk, and that Bertha Foley, the maid, had one. That none of those other than the one held by the maid had been out of its usual place that morning, and he approached the maid to make inquiries. Lentz and the maid differ as to the occasion of their first conversation. Lentz says they were alone while the maid says the two city officers were present. The maid (Bertha Foley) said that when Lentz and the two city officers first talked to her about the loss, Lentz asked her if she had a key to room 801, and she told him she did. He asked if she could get into the room and that she replied in this way: "I told him I did not know, I could awhile ago." She further testified that Lentz then said, "Let's go up there." They all went to room 801 and witness unlocked it and they all went in. That she had not been there on that morning before and that she had not cleaned the room. The officers searched the room. That Lentz told her that she had the money, and that if she did not produce it she would have to go to jail and lose her job. That Lentz then called the housekeeper and told her to have appellee to remove her clothes and search her. The

men stepped out into the hall and the appellee removed all of her clothing and the housekeeper searched through her clothing, and failed to find the money. After appellee dressed, the men returned to the room, and being advised that the missing money was not found, Lentz asked the housekeeper if she could get another maid. He was told that it was doubtful as help was scarce. Lentz then told appellee that she had the money and must produce it. Appellee protested to Lentz that she did not have it. She said Lentz and one of the city officers took her up to the 15th floor, so that she could change from uniform to street clothes; that as they passed the linen room, Lentz stopped and one city officer went on with her to the dressing room and waited outside until she changed. That she never did see Lentz any more, but that the policeman took her to the city jail and locked her up; that she remained in jail from about 11 o'clock A. M. until about 4 o'clock P. M., when she was released. Appellee had formerly testified by deposition that she did not object to being taken to room 801 and searched, but she did object to being put in jail for something she had not done. Upon the trial she testified that of course she objected to being accused of stealing the money and being searched by the housekeeper in room No. 801. The foregoing is the substance of appellee, Bertha Foley's, testimony.

Lentz testified that he was a commissioned city policeman, a deputy sheriff and deputy constable, but that he was not active in either capacity, but that his sole duties were in the hotel. That the manager had instructed him to make no arrests if he could procure a city officer; that he did not at any time arrest Bertha Foley, nor did he direct the city officers to do so; that he only gave them the information he had and aided them in an effort to locate the missing money. That the money was found by another maid in the bath room of room 801, and when so advised he telephoned the police department that the money had been found; that he did not know Bertha was in jail, but that he told the department of the finding of the money to prevent the further labors of those officers on the case.

The trial court gave a definition of the term "false imprisonment" and submitted three special issues to the jury. They were:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the

plaintiff was falsely imprisoned by the house detective, Lentz?" This issue was answered "No".

"Special Issue No. 2. Do you find from a preponderance of the evidence that the arrest of plaintiff by the officers of the City of Fort Worth was brought about at the direction of the house detective, Lentz?" This issue was answered "Yes".

"Special Issue No. 3. What amount of money, if paid now in cash, would reasonably compensate plaintiff for damages, if any, sustained by her as a result of said arrest and imprisonment?" The answer was "$250.00".

In connection with the last issue the court properly limited the jury to consideration of the elements of damages claimed in the petition.

When the introduction of testimony was concluded, appellant moved for an instructed verdict, which was overruled by the court. After the verdict was rendered, it again moved for judgment on the verdict, and in the alternative, moved the court to disregard and set aside that part of the verdict embraced in special issue No. 2 and its answer and for judgment on the remainder of the jury verdict. This motion likewise was overruled by the court, and judgment was entered for appellees for $250.

In the six propositions presented by appellant, it is contended that (1) the court should have instructed a verdict in its favor, and (2) the evidence is insufficient to support the verdict returned by the jury upon the issues submitted. It is contended here that if this court should not reverse and render judgment for appellant, it should in any event reverse and remand the cause for another trial, because there is no jury finding that appellee was illegally arrested and imprisoned.

■■ The court should not have given a summary instruction for appellant, nor was the court authorized to set aside the answer to the second special issue in which it was found that Lentz, the house detective, directed the arrest of appellee by the city officers. If the question had been properly framed, there are sufficient facts and circumstances in evidence to raise the issue. But we do think very material issues in the case were not submitted for determination by the jury. The facts disclosed by the testimony of the witnesses clearly raise the question of whether or not

Bertha Foley was falsely arrested and imprisoned, but they are not so conclusive as to authorize the court to so find. This was a pertinent issue in the case and where the evidence is conflicting in its nature, as in this case, the question was one for the jury. Lee v. International & G. N. R. Co., 89 Tex. 583, 36 S.W. 63; Wallace v. Southern Cotton-Oil Co., 91 Tex. 18, 40 S.W. 399. In view of the first special issue which inquired if appellee was falsely imprisoned by Lentz, the house detective, we do not consider that she waived the issue of whether or not she was falsely imprisoned by some one else, to which wrongful act Lentz was a party by direction and participation. The answer of the jury to the first issue found that Lentz did not falsely imprison appellee; in the petition it was alleged that Lentz falsely imprisoned her by taking her to room 801 and there detaining her for questioning, and causing her to be searched by the housekeeper; by the answer of the jury Lentz was acquitted of any wrongful act on that point. It was further alleged that thereafter he directed the city officers to arrest and imprison her. While Lentz testified that he did not so direct the city officers, yet in view of the circumstances developed by the evidence, to the effect that he told appellee that if she did not produce the money which she had stolen, she would have to go to jail and lose her job, and the fact that she was thereupon turned over to the policemen and taken to jail, we cannot say there was no testimony to warrant the contention that he directed her arrest and imprisonment.

The question then arises, was appellee illegally arrested and imprisoned by the policemen? The record is silent as to whether or not the policemen who imprisoned appellee held a warrant for such purpose; nor does it appear that they failed or refused to take her before a magistrate and be given an opportunity to make bond. A peace officer holding a warrant of arrest, issued by a court of competent jurisdiction, is not the guarantor of the guilt of an accused person.

The petition in this case does not disclose upon what ground it is claimed appellee's arrest and imprisonment were illegal. There was no exception to the petition upon this ground. If there had been exception sustained because of the nature of these allegations, certainly it could have been cured by amendments.

Apparently appellant has presented this appeal upon the theory that there was no warrant issued and executed in this case; it plead and proved the existence of City ordinances, which it contends authorized the arrest. Ordinance No. 321 provides: "It shall hereafter be unlawful for any person within the corporate limits of the City of Fort Worth to in any manner interfere with, take up or use any personal property of any other person, firm or corporation, without the consent of the owner thereof, or other person in charge of such property." And Section 1 of Ordinance No. 512 reads: "All policemen in the City of Fort Worth, in the exercise of a sound discretion, may arrest without a warrant therefor, any person or persons found in suspicious places, or any person or persons found under circumstances reasonably tending to show that such person or persons have been guilty of some felony or breach of the peace, or violation of some municipal ordinance, or about to commit some offense against some State law or against some municipal ordinance." Article 214, Code Criminal Procedure, provides for the passage of such an ordinance by municipalities as that above quoted. Such ordinances have been held by our courts to be valid. San Antonio & A. P. R. Co. v. Griffin, 20 Tex.Civ.App. 91, 48 S.W. 542, writ refused; Pratt v. Brown, 80 Tex. 608, 16 S.W. 443.

The foregoing provisions become pertinent when we come to consider whether or not the arrest and subsequent imprisonment of appellee by the police officers were illegal. If their acts were illegal, of course, grounds for a civil action, such as this, would lie against those who directed or caused the unlawful acts, as well as those who actively participated therein. 19 Tex.Jur., pp. 570 and 571, sect. 24, and the many authorities there cited.

The house detective was well within his rights as an employee of the appellant to make an investigation of the reported loss of the money by the guest, and under certain conditions could arrest and detain the appellee and deliver her to the custody of the city police, and even could have and should have requested her detention and prosecution, without incurring liability to his principal. By the terms of Article 325, Code Criminal Procedure, he could have prevented the consequences of theft by seizing stolen personal property and the supposed offender and taking both to a peace officer to be thereafter treated and disposed of in the manner required by the Act. It is there said: "To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay." Again the question of fact arises whether or not the supposition that appellee was in possession of stolen property was based upon reasonable grounds. See Henderson et al. v. United States Fidelity & Guaranty Co., Tex.Com.App., 10 S.W.2d 534, discussing that court's former opinion, 298 S.W. 404.

The nature and effect of the house detective's acts, in determining whether or not he directed any wrongful acts that may have been perpetrated by the city policemen, are controlled by the very wholesome rules and principles announced in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Meyer et al. v. Monnig Dry Goods Co., Tex.Civ.App., 189 S.W. 80, 82, writ refused. In the view we take of the disposition of this appeal, we believe it improper to discuss in detail this phase of the evidence; but suffice it to say the issue of the nature of Lentz' direction and participation in the subsequent acts of the police officers is raised by the evidence and should have been submitted to the jury; especially is this true if it should be determined by the jury that there was an illegal arrest and detention.

Appellant seasonably objected to the submission of special issue No. 2, because it placed a greater burden on defendant than that required by law, and did not require evidence by plaintiff showing that the arrest by the city officers was illegal and because even if Lentz had directed a legal arrest by the city officers, no liability would have been shown against appellant. Similar grounds were raised by appellant in its motion for new trial and the action of the court in overruling them are before us on assignments of error. The assignments presenting this question are sustained, requiring a reversal of the judgment entered.

With appellee's pleadings in their present condition and if the evidence is the same upon another trial, an issue should be submitted similar to that presented as No. 1, at the former trial, yet it should be limited to the occasion of appellee's detention in room 801. A further issue should be submitted by which the jury

could determine if Bertha Foley was illegally arrested and imprisoned by the city officers, and if so, was such arrest and imprisonment directed by Lentz. If it should appear from the evidence that no warrant was issued for appellee's arrest but that she was arrested under one of the provisions of law for arrest without warrant, then a question of fact would arise as to whether or not reasonable grounds existed to justify such an arrest, as provided by the city ordinance. Of course all such issues should be so framed as to avoid duplicity and multifariousness.

■■ It is obvious that it was incumbent upon appellee to show that her imprisonment was illegal, and that, if so, that it was directed by Lentz. It is true that Lentz testified that he did not direct her arrest. This is not conclusive, but could be rebutted by circumstantial evidence, in a way so as to raise an issue of fact for determination by the jury.

■ ■ It will be observed by the second special issue given by the court and complained of here, the jury could have answered that issue in the affirmative, as it did, to the effect that Lentz directed the arrest made by the city officers, and yet the arrest could have been perfectly legal, insofar as the record before us goes. If the arrest by the city officers was legal, then the appellant would not be liable for false imprisonment, even if it was directed by Lentz. As stated by some of the decisions, liability for malicious prosecution is not an issue in this kind of a case. It cannot be assumed that although Lentz directed the arrest by the city officers, that he could foresee that they would make an illegal arrest. It was said in Meyer v. Monnig Dry Goods Co., supra: "Even if he [the representative of defendant] had requested the arrest, it could not be presumed that he thereby intended an unlawful arrest." On the contrary the presumption of law prevails that officers have acted in a legal manner in making an arrest. 4 Tex.Jur., p. 771, sect. 19. See also Presley v. Fort Worth & D. C. R. Co., Tex.Civ.App., 145 S.W. 669.

■ It is apparent from this record that the evidence, especially upon some of the points mentioned, has not been fully developed. The case was tried upon what we believe to be an erroneous theory; that is, that it was assumed that the arrest by the city officers was illegal, and that if Lentz directed that arrest, his principal, the appellant, was responsible for damages that followed. In such circumstances, it is not encumbent upon us to reverse and render a judgment, for the reason to do so would require us to pass upon questions of fact which have not been brought before the trial court. We have indicated that appellee's petition does not specifically plead a theory which under the facts would render the arrest made by the city officers illegal. We think the ends of justice would be best subserved to remand the cause for another trial, so that it may be fully developed along the lines pointed out. We are supported in these conclusions by the authorities cited by us in the recent case of Ostrom v. Jackson, Tex.Civ.App., 127 S.W.2d 987.

For the reasons stated, judgment of the trial court should be reversed and the cause remanded, and it is accordingly so ordered.