## HEATH v. BOYD.

No. 9364.

Court of Civil Appeals of Texas. Austin.

April 7, 1943.

Rehearing Denied April 28, 1943.

T. R. Johnston, of San Angelo, for appellant.

Collins, Jackson, Snodgrass, & Blanks, of San Angelo, for appellee.

BLAIR, Justice.

Appellant, Bert Heath, sued appellee, J. A. Boyd, Sheriff of Irion County, to recover $1,000 actual and $1,500 exemplary damages for alleged illegal arrest and imprisonment. A jury verdict upon special issues resulted in judgment for appellee; which judgment we affirm.

In substance appellant alleged that at the time of his arrest he was "blading" or cutting a new road as an employe of the Commissioners' Court of Irion County, and under its lawful order; and that while committing no offense appellee arrested him without a warrant and illegally held him for about three hours. Appellee answered

that at the time and place in question appellant was operating a large road machine, cutting small trees, grass and turf on lands lawfully in the possession of R. D. Johnson as lessee; that before the occurrence Johnson advised appellee that appellant was cutting the road across the land without his consent and over his protest; that Johnson advised appellee that he had tried to stop appellant, but that appellant refused to stop; that thereafter appellee, as sheriff, and in the discharge of his duties of preventing a breach of the peace between Johnson and appellant, of keeping down trouble between them, and of protecting the property lawfully in the possession of Johnson from injury, went to the place where appellant was cutting the road, and requested him to stop cutting the road; that appellant told him that he was not going to stop, and that the only way appellee could stop him was to arrest him; and that thereupon appellee told appellant that if that was the only way he could stop him, he would do it that way; whereupon appellant got in appellee's automobile and rode a short distance to where his own car was parked, got in his own car, and drove himself to Mertzon, and then went to the sheriff's office with appellee, where he stayed for about an hour, and was then discharged by appellee.

In answer to special issues the jury found: (1) That the Commissioners' Court, acting through appellant, was blading the road without the consent of R. D. Johnson; (2) that appellee believed it was necessary to arrest appellant at the time, "in order to stop the operation of the maintainer without a disturbance of the peace"; and (3) that it was reasonably necessary for appellee to arrest appellant "in order to prevent injury to the property in the possession of R. D. Johnson." Upon these findings judgment was rendered for appellee.

Appellant presents two points, in substance, as follows:

1. That the evidence conclusively showed the arrest without a warrant to be unlawful.

2. That the evidence conclusively showed that at the time of his arrest appellant was working under the direction of the Commissioners' Court upon a road which had been laid out by order of the Commissioners' Court; and that the trial court erred in permitting such action of the Commissioners' Court to be collaterally attacked in this suit for damages for false arrest and imprisonment.

The second point will be first discussed. Appellant alleged that he was working at the time of his arrest under lawful orders of the Commissioners' Court. He introduced two orders of said court looking to the establishment of a road, or the shortening of an old abandoned road over the ranch leased by Johnson from Miss Ella Sugg. She had consented to the establishment of the road at any point satisfactory to Johnson, her lessee. The second order, dated February 9, 1942, recited that such a road was desired by certain parties, including Johnson; and that the court would meet the parties on a certain date to try to locate the road. After a second attempt the Commissioners' Court and Johnson viewed out and agreed upon the location of the road to a certain point, but were unable to agree upon the location of the remainder of the road, being from the point agreed upon to the Concho River, a distance of more than one mile. Later two of the Commissioners, in the absence of Johnson, marked or "flagged" this portion of the road. No proceeding, such as a petition for the establishment of the road, notice, or for a jury of view to lay it out as required by Arts. 6703, 6705, and 6707, R.S.1925, was ever had, and under the undisputed evidence the effort made was merely to establish and locate the road by agreement with Johnson, which the undisputed evidence also shows was not made. Therefore, neither appellant nor the Commissioners' Court had any lawful authority to locate or blade or cut the road at the time of the arrest of appellant, without the consent of Johnson. The jury found that Johnson had not consented to the location or blading of the road at the time of the arrest of appellant. This was not a collateral attack on any valid order of the Commissioners' Court establishing the road at the point where appellant was arrested, because no such order had ever been made; and the only possible issue in that respect was whether Johnson had consented to the location or blading of the new road at the point where appellant was arrested; which issue was decided against appellant.

Nor do we sustain the first point that the evidence conclusively showed the arrest of

appellant without a warrant to be unlawful as a matter of law.

The facts show that after Johnson discovered that the new road had been marked or flagged, he protested several times to at least two of the Commissioners, one of whom was in charge of the work, and to the County Judge, telling them that he did not want the road at that location, and that it would not serve him; and, according to his testimony, that on the night before the day of the arrest of appellant he obtained an agreement with these Commissioners and the County Judge that the road as flagged would not be bladed or cut until the matter of its location could be settled. He learned on the following morning early that appellant and other employes of the Commissioners' Court were starting to blade and open the road. He then called appellee, as sheriff, by phone, and requested his aid in stopping the work. Appellee went immediately to the home of Johnson's brother, about three or four miles from where the work was to be started, and where Johnson was; and after Johnson had informed him of the facts he apparently sent Johnson to request that appellant and the other employes not commence work on the road. When Johnson arrived he found that work had begun, and after informing appellant and the other employes that it had been agreed to stop the work until the matter could be settled, he requested all of them to stop the work, offering to pay their wages for the time lost; and told them that if they did not stop the work, he would have to file a complaint against them. All of the employes except appellant agreed to stop work and went to their road camp, about one mile away. Appellant, who was the foreman in charge of the work, tried to keep the other employes from stopping work, but they told him that they were not able to pay a fine. Appellant refused to stop work, testifying, in substance, that he did not believe Johnson was telling the truth about having an agreement with the Commissioners to stop the work until the matter could be settled, and "for the reason that he (Johnson) was going to do anything to stop that job."

Johnson then returned to his brother's home where appellee was, and after informing him what had taken place, requested that he, as sheriff, stop appellant from blading the road and injuring his land. The sheriff then went alone to where appellant was blading or cutting the new roadway, and after stopping him, told him that he was there to prevent a breach of the peace and in order to protect the property of Johnson, and that he thought appellant was guilty of trespassing, and requested appellant to stop his work. Appellant replied that he was not going to stop and that the only way appellee could stop him was to arrest him; and thereupon appellee told him that if that was the only way, he would do it that way. Appellant then left the grader, got in the sheriff's car, rode with him a short distance to his own car, got in it, drove some fifteen miles in his own car, ahead of the sheriff, to the sheriff's office, where, about an hour later, he was released with the statement, according to appellant, that if he went back and tried to blade the road, appellee would have to again arrest him. No complaint was filed and the arrest was made without a warrant.

The facts detailed fully sustain the jury's findings that appellee believed that it was necessary to arrest appellant in order to prevent a disturbance of the peace and in order to prevent appellant from injuring the property in the lawful possession of Johnson. Under the jury findings and the undisputed evidence appellant had no right to go on the property of Johnson without his consent at the time of his arrest, and to blade the new roadway, or to cut the turf and trees thereon as he was doing. Johnson protested and asked appellant to cease injuring his property. Appellant refused his request. Under the facts stated and as found by the jury Johnson had the right to use all force necessary to prevent appellant from injuring his property as he was doing. Arts. 65, 67, 68 and 69, Code of Criminal Procedure 1925. This he did not do, but requested the sheriff as the conservator of the peace to stop the injury to his land by appellant. Art. 70 of the same Code authorizes any person other than the one whose property is about to be injured to prevent the injury; and Art. 71 provides that he may use the same force in doing so as the person whose property is about to be injured could use. Art. 76 provides that when a peace officer is informed of a threat to injure a person or property, he should take such measures as the person threatened might take to prevent the injury. Art. 41 provides that the sheriff is a "Conservator of the peace," and that: "Each sheriff shall be a con-

servator of the peace in his county, and shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial. He shall quell and suppress all assaults and batteries, affrays, insurrections and unlawful assemblies. He shall apprehend and commit to jail all offenders, until an examination or trial can be had."

Arts. 77 and 78 make it the duty of each peace officer to prevent the commission of an offense against the person or property of any person in his presence or view, and provide that he may use such force as is reasonably necessary to do so. Art. 212 authorizes any peace officer or other person to arrest without warrant any person committing an offense in his presence or view, if the offense is a felony or one against the public peace. Art. 1350 of the Penal Code 1925, as amended, Vernon's Ann.P.C. § 1350, provides that it is an offense, punishable by fine, for one to wilfully injure the real or personal property of another. And Art. 1142 of the Penal Code authorizes the use of force or violence "to preserve the peace, or to prevent the commission of offenses," and "in preventing or interrupting an intrusion upon the lawful possession of property." Numerous other statutes not necessary to mention here make the arrest without warrant for specific offenses named lawful.

■ The various statutes cited and analyzed by us may not deal directly with facts similar to those herein involved, but they show that the general policy of the law of this State is to authorize officers who are conservators of the peace to arrest without warrant all persons who are guilty of a breach of the peace or other violation of the criminal laws in his presence.

In the early case of Pratt v. Brown, Receiver, 80 Tex. 608, 16 S.W. 443, 445, the Supreme Court discussed the question of arrest without warrant at length, and said: "Officers who by virtue of their office are conservators of the peace, have the right to arrest without warrant all persons who are guilty of a breach of the peace or other violations of the criminal laws [committed] in their presence."

■ Art. 41 of the Code of Criminal Procedure clearly makes the sheriff a conservator of the peace and directs that he "shall arrest all offenders against the laws of the State, in his view or hearing." This sort of arrest must necessarily be without warrant, because if the offense is committed in his view or hearing, he could not have obtained a warrant, and the statute directs that he shall then "take them * * * for examination or trial." If the arrest were upon a warrant, he would merely place the offender in jail. This statute also clearly provides that he shall arrest "all offenders against the laws of the State, in his view or hearing," which necessarily means every character of offense or crime punishable under the criminal laws of this State. And this statute clearly makes the common law rule the statutory law of this State, which common law rule, as shown in the case of Pratt v. Brown, supra, is that "officers who by virtue of their office are conservators of the peace, have the right to arrest without warrant all persons who are guilty of a breach of the peace or other violations of the criminal laws [committed] in their presence."

■ In the instant case appellant was not only unlawfully upon the land of Johnson at the time of his arrest, but was conducting himself in such manner as was reasonably calculated to cause a breach of the peace or a serious difficulty with Johnson, and was at the time violating Art. 1350 of the Penal Code, which provides that it is an offense, punishable by fine, for one to wilfully injure the real or personal property of another, in that without the consent and over the protest of Johnson he was blading the roadway, cutting ditches, grass, and trees on his leasehold estate. That he was acting wilfully in the injury of the property is revealed by his own testimony. He testified that Johnson fully informed him that an agreement with the Commissioners had been made not to commence work on the road until the location of it could be settled. Appellant further testified that he did not believe Johnson was telling the truth, and "for the reason that he (Johnson) was going to do anything to stop that job." Appellant then tried to keep the other employes of whom he was foreman from quitting work upon Johnson's request, and he continued to blade the roadway, cut ditches, grass, and trees therefrom. He was so operating the machine when the appellee sheriff arrived on the scene. The sheriff stopped appellant, told him what his mission was, and tried to get him to stop injuring the prop-

erty of Johnson. Appellant told the appellee sheriff that he would not stop, and that the only way appellee could stop him was to arrest him; and thereupon the sheriff told him that if that was the only way he would do it that way. Thus in the view and hearing of the sheriff appellant was conducting himself in such manner as was reasonably calculated to cause a breach of the peace or a serious difficulty with Johnson in the immediate future; and appellant was at the time and in the view and hearing of the peace officer committing and threatening to continue to commit the offense of wilfully injuring the property of Johnson. Appellant's arrest under such facts and circumstances without a warrant was lawful.

The judgment of the trial court is affirmed.

Affirmed.