## LEWIS WILSON *v.* THE STATE.

1. OPINION OF NON-EXPERT WITNESS.—It is error to admit in evidence the opinion of a witness ignorant of anatomy, as to the sex of a person from an examination of the skeleton.

2. EXPERTS—IDENTITY.—To secure the best evidence of identity, physicians or persons skilled in anatomy—experts—should be called;

and unless called, and when the opinions of others have been admitted, the error is ground of reversal.

3. See testimony held insufficient proof of the *corpus delicti* in a trial for murder.

APPEAL from Robertson. Tried below before the Hon. J. B. Rector.

*William H. Hamman*, for appellant.

*George Clark, Attorney General*, for the State.

GOULD, ASSOCIATE JUSTICE.—Lewis Wilson was tried at the February term, 1874, of Robertson county District Court, on an indictment charging him with the murder of his wife Jane; was convicted of murder in the first degree, the punishment affixed being death. The evidence adduced will only be so far presented as is deemed necessary to show the grounds and extent of our decision.

In August or September, 1873, Jane Wilson disappeared from her home. There is some evidence that she said she was going to her "people," and, so far as the evidence discloses, the fact of her disappearance did not at the time lead to any investigation. In December following a skeleton was found in a thicket in the woods, about half a mile from defendant's house. Sharper Haley, "an old colored man," who found the skeleton whilst following some wild turkeys, testified that the flesh was off the skeleton, which looked as if the dogs or wolves had been eating the body, but the bones were still held together by the sinews, and it "still smelt." No "clothing or hair" was found about it, nor anything except the skeleton itself. The skull was broken in just above the ear in a round hole, which some witnesses say looked to have been done with a hammer or the eye of a hatchet. Haley says the skeleton was broad across the hips and about five feet high. Another freedman says the skeleton was a large one, and was the skeleton of a woman, but does not state how he knew the fact.

There was evidence that Jane Wilson was a fleshy woman, of large frame, and that she had a front tooth missing. One witness says that she had both an upper and lower front tooth missing. Beyond the fact that Jane Wilson had one missing front tooth, and that there was a missing front tooth in the skeleton, the witnesses do not agree in their statements. W. J. Griffin, a white man, testifies that Jane Wilson had an upper front tooth missing; that he examined the skeleton carefully to determine if it was the skeleton of Jane Wilson, and that there was an upper front tooth out in the jaw of the skeleton. Jane Kelley swears that she looked at it good, and says, with great emphasis, that she is certain the tooth missing was in the lower jaw. Haley locates the missing tooth first in the lower jaw and then in the upper jaw. Griffin also swears that he could not say positively, but believes it was the right front tooth that was out. He says, "The gum had grown over the hole the tooth came out of, and this was apparent also in the skull when I examined it; there were some of the teeth missing, but the holes were apparent in the gum, except in the case of the tooth in front." An inquest is twice alluded to in the testimony, but no witness testifies that he participated in it, nor was there any testimony of any physician or any person skilled in anatomy who had examined the skeleton.

After the verdict there was a motion for new trial, supported by the affidavit of two physicians that, in their opinion, "A person unacquainted with the science of osteology or the anatomy of the human system, could not distinguish the difference, and would not be able, upon examination, to decide whether a skeleton was that of a male or of a female; that in cases of female skeletons, where they have not borne children, it is exceedingly difficult for physicians to distinguish skeletons of large females accustomed to labor from those of delicate males unaccustomed to labor.

It was necessary for the prosecution to identify the skeleton found as the remains of Jane Wilson. Until her death was established, the conviction of Lewis Wilson "would not be warranted, though there were evidences of his conduct exhibiting satisfactory indications of guilt." (3 Greenl. Ev., § 131.)

Direct proof of the identity of the remains found as those of Jane Wilson was, from the nature of the case, impracticable. The attempt was to prove that the sex and size of the skeleton corresponded with hers, and that there was a missing tooth in each exactly in the same place, and presenting in the jaw of the skeleton the appearance, as to its socket and surroundings, to be expected in the jaw of Jane Wilson, and from these circumstances to establish the identity. If it be granted that these facts, when established, would show the identity with sufficient certainty, the inquiry would still remain, Were the facts themselves sufficiently proven by competent evidence? It is said "that each fact necessary to the conclusion must be distinctly and independently proved by competent evidence, and by the same weight and force of evidence as if each one were the main fact in issue." (Comm *v*. Webster, 5 Cushing, 317, as cited in Henderson *v*. State, 14 Tex., 512.) This rule would apply to the fact of the correspondence of the missing tooth or teeth, sockets, &c., with full force; and just in so far as sex and size were material facts to be shown, it would apply to them. They certainly are material, unless the identity is sufficiently proven by the other facts. Greenleaf says: "When only mutilated remains have been found, it ought to be clearly and satisfactorily shown that they are the remains of a human being, and of one answering to the sex, age, and description of the deceased." (Sec. 133, vol. 3.) It is also said: "In examining skeletons, great attention should be paid to their anatomical characteristics, upon which the important facts of the age and sex of the person depend, as these may be

decisive of the whole case in favor of the accused." (Bur-rill on Cir. Ev., p. 681.)

In the case before us the evidence does not show that the skeleton was examined by any one skilled in the anatomy of the human frame, and capable of giving an opinion as to its sex or age. No physician or other scientific person testified as to the correspondence of the jaw of the skeleton, even as exhibited in the evidence of Griffin, with the appearances to be expected in the jaw of Jane Wilson. Surely, if there was an inquest, some physician was called in to examine the remains. If so, he did not testify on the trial.

A witness who, it is fair to assume, is unskilled in anatomy, swears that it was the skeleton of a woman. The affidavit of physicians filed with the motion for new trial tells us that such a person would not be able to distinguish the sex of a skeleton. It follows that not only did this witness testify as a fact to that which could only be a matter of inference or opinion, but that, even considered as an opinion, his testimony was inadmissible without evidence of knowledge of anatomy.

Another witness fixes the size of the skeleton at five feet. Jane Wilson was proved to be a large woman, and we know that the average height of women is several inches more than five feet. (Beck's Med. Jur., vol. 2, p. 29.)

A proper examination by witnesses skilled in human physiology would have enabled the prosecution to show by competent testimony not only the sex and size of the skeleton, but also its approximate age, and, perhaps, whether it was of the white or black race. (Wharton & Stible, vol. 2, p. 1, secs. 287, 289, 296; Beck's Med. Jur., vol. 2, p. 28, *et seq.*)

If no such examination has ever been made, it may not yet be too late to supply the neglect. Surely, in cases affecting human life, no effort should be spared to establish the truth with all practicable certainty. It was said by

Justice Wheeler, in the case of Cooper *v*. State, 19 Tex., 448, that in cases "depending wholly upon circumstantial evidence, the mind seeks to explore every possible source from which any light, however feeble, may be derived; and in such a case it is peculiarly proper that the jury should have before them every fact and circumstance, however slight, which may aid them in coming to a satisfactory conclusion." The relaxation of the rule requiring the body to be identified by direct evidence before a conviction of murder will be supported, has grown out of the necessity of the case, and should not be unnecessarily extended. We cannot sanction the apparent neglect in this case either to hold an inquest, with proper care and assistance, or to use any effort to make the examination then had available on the trial.

It is not intended to express any opinion as to the weight or effect of the evidence adduced on the trial.

We think the court erred in refusing a new trial: 1st. Because improper evidence had been allowed to go to the jury. 2d. Because it was apparent that the *corpus delicti* was not established by the most satisfactory evidence attainable.

The objection is made that there is a discrepancy between the evidence and the charge in the indictment, as to the nature of the wound and the instrument with which it was inflicted. We think the record does not support this objection.

The judgment is reversed and the case remanded.

REVERSED AND REMANDED.