PAULINE PIPHER V. THE STATE.

No. 22055. Delivered April 8, 1942.
Rehearing Denied May 27, 1942.

The opinion states the case.

*M. Neal Smith* and *H. P. Shead,* both of Longview, and *Baskett & Parks,* of Dallas, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was given a sentence of two years in the penitentiary on a charge of assault to murder and brings this appeal.

The evidence disclosed that on the 29th day of March, 1941, Luther Winters and Forrest Fowler, who resided in the town of Van, Van Zandt County, Texas, went to the City of Tyler where they contacted Gladys Partney and Mrs. Joe Ann Skinner, sisters, and accompanied them on a "joy ride" into Gregg County, visiting two or three beer joints and dancing places, the last one being the "Pine Lodge," operated by appellant and her husband. This was about 5:30 or 6 o'clock in the afternoon. The four went into the lodge and ordered drinks. From this point the evidence is quite in conflict as to what happened, but the pertinent facts well established from evidence of both sides is that a pistol was present and the parties were drinking beer. Mrs. Skinner had formerly worked at the place and upon leaving failed to get all of her things. She called for these and another girl who worked there went for them in a nearby cottage. As she returned, appellant and the girls had become involved in a difficulty and appellant reached for a pistol which was lying at a place visible to all of the parties. According to the testimony of the State the four customers had been dancing and patronizing a coin machine when, without much warning, appellant flashed the pistol and threatened to shoot and ordered them to leave. Fowler left the room first and did not see what was taking place as the shooting occurred. Winters was in the room, but noticing that Fowler was in his car and starting it, ran to him and jumped on the running board. He was permitted to enter and they returned to their home in Van Zandt County without investigating further or knowing the results. The two women told about the same story, but appellant and the young girl gave testimony quite in conflict with the State's. A written statement by Elizabeth Strickland, the girl who worked in the place, which was taken on the night of the trouble is not seriously in conflict with the State's evidence, but her testimony presented on the trial of the case is corroborative in detail of the statement made by appellant as to what took place.

Appellant says that the parties were all drunk when they came into her place of business; that they ordered beer and ale, but did not do much drinking and were soon involved cursing each other, as well as appellant. The final result was that somebody began throwing bottles and ash trays at appellant and, in order to frighten them, she grabbed the pistol with no intention of shooting it. Joe Ann Skinner, with a bottle of beer in her left hand, grabbed appellant with her right. At the same time Gladys Partney, the injured party, came behind the bar and grabbed the pistol. As she did the pistol was discharged accidentally, the bullet going through the hand and head of Gladys and entering the ceiling above. This fairly summarizes appellant's version of what occurred. The position of the parties is not described by appellant and the distance the gun was from the wounds which it inflicted is not estimated. Also, another witness who made a survey of the place with appellant's attorney, located the bullet as having gone into a curtain wall instead of the ceiling at a distance of some sixteen to twenty feet from the place where appellant said she was standing behind the bar. When the injured girl was taken to the hospital the doctors found the wound on her hand and a very serious wound in her head. The brain was penetrated and portions of the brain had come to the surface. The doctor described the difficulty in keeping the brain from protruding through a hole in the skull. The injuries were serious and he did not expect her to live for an hour. She was partially paralyzed at the time of the trial, probably permanently, and was brought into the court room on a stretcher. There is no conflict in the evidence that the wound was serious and was such as might have produced death.

The record contains but one bill of exception. There is no objection to the court's charge for our consideration and the only question we find in the motion for new trial is that embraced in the bill of exception. This bill complains of the testimony of the witness Lewis Grigsby, an investigator for the District Attorney's office, who testified that he made an investigation of the case and saw the injured party immediately after the shooting. He did not know whether or not she had powder burns, but Dr. Adams testified that she had none. As a qualification to give testimony about the distance the powder burns may be inflicted this witness said:

"I am acquainted with firearms * * * I have been familiar with firearms for about ten or fifteen years. I have had occas-

sion to make researches and studies of the manner in which firearms operate, the number of grains of powder and percussion, and so forth, in an ordinary cartridge. In the discharge of a firearm the percussion cap causes a discharge of powder which causes the bullet to leave the cartridge hole. When the bullet leaves the hole there is a certain amount of powder and gas that comes out behind the projectile. I am familiar with the Smith & Wesson pistol of that kind (the one introduced in evidence.) It is what I would call in good condition. I have not conducted any experiments with that pistol to determine powder burns * * *."

The witness was further asked, on behalf of the State, "at what distance he would reasonably expect powder to follow a projectile fired from the gun in the condition he there saw the pistol involved in this case." Objection was made "to any estimating or judging on his part as to where he would expect to find powder burns from this pistol due to the fact that the witness has stated he has conducted no experiment with that particular pistol." The court overruled this objection and the witness answered, "I expect to find powder burns at an approximate distance of 20 inches." This is the evidence and this is the objection found in the bill.

Recalling that the defense testimony fails to present any contention that the pistol was within twenty inches of the wound which it inflicted, it appears that this testimony is not potent in denial of what the appellant did testify as to the occurrence. The objection is limited and would call for but brief consideration. However, able counsel presenting the case before this court, taking the record as he found it after the trial, relies on a number of authorities for our consideration and, while it is not necessary nor appropriate to discuss them all, we do find a sufficient number of the cases which he has cited that are contrary to the contention in this appeal and none, in our opinion, tend to support appellant. We refer to a few of such cases.

Wilson v. State, 41 Tex. 320: Judge Gould interestingly discusses the evidence of a party who admittedly was not familiar with the subject and able to reach the conclusion. Wilson was charged with the murder of his wife who, it was thought, had disappeared some months before. The skeleton of a party was found in the vicinity and the evidence

of a witness showed that he thought the skull was that of a woman. A physician gave testimony in behalf of the party on trial that one not familiar with the anatomy of a person would be unable to reach a conclusion as to the sex of a deceased from the skull. It is noticed that the defense offered no evidence to show that the witness would have to experiment with the particular pistol in order to reach a correct conclusion. If such be true, we could not take judicial knowledge of so remote a fact.

Bearden v. State, 73 S. W. 17, cited by appellant. We quote from the opinion by Judge Brooks at length because it is the case more nearly in point than any of those referred to in appellant's brief:

"I have had experience in the use of a shotgun. I have owned shotguns, and my father had one. Have loaded and fired shotguns a great deal. The deceased, Lovey Bearden, was killed with a double-barreled muzzle loader, which was loaded with squirrel shot. It has been 12 years since I used a muzzle loader. My father had a gun which I used some prior to the year 1870. I bought a muzzle loader myself in 1879, and kept it for five years, and sold it and bought a breach loader. Have had a good deal of experience in the use of a shotgun, but never made hunting a business. Before coming to Palo Pinto county I lived in Young County. Where I lived up there I was a farmer and stone worker. I hunted at odd times. I never practiced at targets with squirrel shot. Never shot anything but squirrels with them. I have often shot at trees with shotguns, in order to get the range of the gun, and at different distances. Have never shot at trees 5, 10, 15, or 20 paces. I have owned two shotguns myself. Have hunted with borrowed guns some. Have never practiced at targets, boards, or anything of the kind, to see how shot would scatter.' Appellant objected to said testimony on the ground that witness had not shown himself to be an expert in the use of muzzle-loading shotguns, which was overruled by the court. Thereupon witness testified as follows: 'From what I know about shotguns, and the way shotguns scatter, I would say that the shot which struck deceased in the face was fired from a distance of about 20 steps. And from the size of the hole in the side of his head, I would say that the shot which made that hole was fired from a distance of about ten inches. At a distance of eighty yards a charge of shot from an ordinary shotgun will scatter over a surface of about two feet; and at distance of 25 or 30 yards,

some 8, 10, or 12 inches.' The court did not err in holding witness had qualified himself in the use of firearms, nor was an error committed in admitting said testimony. Head v. State (Tex. Cr. App.) 50 S. W. 352; Morton v. State (Tex. Cr. App.) 71 S. W. 281."

Hazelwood v. State, 186 S. W. 201: In an opinion by Judge Davidson, it is said that the testimony of non experts may be received only when they state sufficient facts on which to base their conclusions. He then held that the witness in that particular case had not stated sufficient facts. This is related to the subject of insanity and is, as we understand it, the settled rule both in civil and criminal cases.

Ripley v. State, 100 S. W. 943: This is another opinion by Judge Davidson. A physician testfying as to the size and calibre of a ball stated that he had never had any practical experience with firearms and never owned a pistol. The opinion says that he was not qualified to give the statement which he did. Sound as it is, we find no application to the case before us.

Bratt v. State, 41 S. W. 622: We quote from the opinion by Judge Henderson as follows:

"Ordinarily bankers, bank cashiers, and clerks of courts are competent to testify on questions of handwriting. Id. pp. 425-428. As a general proposition, a qualification of a witness to testify as an expert is a question for the trial court, whose decision is not generally reviewable on appeal. If it appear that the witness has any claim at all to the title of an expert, an appellate court will not reverse because his experience is not sufficiently special. If the evidence shows, either directly or circumstantially, that he is an expert in the particular matter under investigation, he is competent to testify; and the value of his testimony, or its weight, will be a question for the jury.*** Of course, the witness must show some special skill as an expert before his testimony would be received, and unless this is shown the appellate court will reverse."

We have been unable to find discussions pertinent to the objection made which would be of any assistance to appellant.

Appellant is a woman, the mother of a very young girl The case is tragic. The occasion as described does not reason-

ably account for the things that took place, either from the viewpoint of the State or of the defendant. The victim is a young girl. If she survives, in the opinion of the doctors, she will be partially paralyzed throughout her life. Finding the defendant guilty, as the jury was justified in doing, they were lenient in assessing the lowest penalty. They performed their duty. The trial court was cautious in his ruling and considerate of appellant. He followed the law as it is written. The objection brings no error of law for this court's consideration.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant reoffers two propositions in her motion for a rehearing. In the first one she reasserts the fact that the testimony of Lewis Grigsby does not evidence that he had qualified as an expert on how far powder burns would be found in the discharge of a pistol such as the one used in this cause.

The above objection to such testimony does not appear in the sole bill of exceptions in this record. The objection made to Grigsby's testimony, as shown in the bill, is:

"* * * the defendant then and there, in open court, objected to any estimating or judging on his (the witness's) part as to where he would expect to find powder burns from this pistol due to the fact that the witness has stated he has conducted no experiment with that particular pistol."

We find no objection in the above quotation as to the qualification of the witness to testify as to how far a pistol upon its discharge would leave evidence of a powder burn.

"The bill must show that the evidence objected to was inadmissible, and specify the reasons or grounds for its exclusion." See 4 Tex. Jur., p. 308.

It is again contended that no evidence of an intent to murder is shown in the record, especially on account of the fact that appellant, after the shooting, had taken the injured party to a hospital, and seemed to lament the fact of the shooting.

The State's testimony, evidently believed by the jury, showed some cursing by appellant, some violence offered to the injured person's sister, and a controversy between the injured person and appellant over some remarks made concerning the sister. Just before the time Gladys was shot, she had asked appellant whether appellant had said that Joan, the sister, did not care anything about anything but whisky and a man, and the State's testimony shows that appellant said: "You are g - d right,.I said it." At this time appellant ordered them out of the place, and the shot immediately followed, according to the State's testimony, appellant behind the bar and Gladys in front of the bar. Much of this testimony was denied by appellant, and the jury had to settle this difference in the testimony. They settled it against appellant's version, and we have no power to say aught other than that their judgment should not be disturbed relative thereto.

The motion will be overruled.